THE STATE v. ROBERT BARKER and AUBREY LEE STOUT, Appellants.— 18 S. W. (2d) 19.

Division Two, June 4, 1929.

*H. K. Bente* and *C. I. Bennington* for appellant.

*Stratton Shartel*, Attorney-General, and *G. C. Weatherby*, Assistant Attorney-General, for respondents.

HENWOOD, C.—The defendants were jointly charged, in the Circuit Court of Pettis County, with stealing, in the nighttime, twelve chickens, of the value of $12 from the messuage of Paul C. Schupp. The venue was changed to the Circuit Court of Saline County, where they were tried together, convicted, and sentenced to imprisonment

in the penitentiary for five years, in accordance with the verdict of the jury. Their appeal brings the case here for review.

The State's evidence shows that Paul C. Schupp was a farmer, living on State Highway No. 50, about six miles east of the city of Sedalia and one and one-half miles west of the town of Smithton, in Pettis County. His dwelling house was located about fifty yards north of the highway, and upon the same premises, and immediately surrounding his dwelling house, were a group of buildings, including his chicken house and barn. The dwelling house of W. E. Lamm was about thirty yards south of the highway and immediately opposite the premises of Schupp. Lamm and his wife and son were returning from Smithton in their Dodge coupe on July 22, 1927, between ten and eleven o'clock P. M., when they noticed an old Ford touring car headed east and standing on the south side of the highway about 120 yards east of Schupp's house. The front lights of the Ford car were "dimmed," and it had no license plate on the rear end and no tail light. They saw a man sitting in the car, wearing a blue shirt and a "light looking" cap. Soon after reaching his home, Lamm heard chickens squawking in the vicinity of Schupp's chicken house. He called his son, got his shot-gun, and he and his son crossed the highway and called Schupp. About the time Schupp joined them, they heard chickens squawking again 'in the vicinity of Schupp's meadow, east of his house. Shortly thereafter, they heard chickens squawking a third time in the vicinity of the Ford car, and then heard the slam of a car door in that direction. The Ford car started east on the highway, followed by Schupp, Lamm and his son in Lamm's Dodge coupe, and Mrs. Lamm telephoned to the sheriff's office at Sedalia. Lamm's son was driving the Dodge and both Schupp and Lamm were armed with loaded shot-guns. About three-quarters of a mile east, they overtook the Ford car and passed it. At the junction of the highway and the road leading southeast into Smithton, the Dodge was turned around and stopped, facing west, about a quarter of a mile east of the point where they passed the Ford car. Schupp and the elder Lamm got out of the Dodge, with their shot-guns, and shouted to the occupants of the Ford to stop, as the Ford approached, but it moved on with increased speed. The chase was renewed, and then the occupants of the Ford car threw out of their car four sacks of chickens, but kept on going. Three shots were fired in the direction of the Ford car and it was driven to the side of the highway and brought to a stop. The defendants were in the Ford car, and the driver of that car, the defendant Stout, was identified as the man who was sitting in that car when the Lamm family observed it, standing on the side of the highway near their home and the home of Schupp, a short while before. Chicken feathers were

found in the back part of the Ford car. The four sacks of chickens were picked up and taken to Schupp's chicken house, and Schupp and the elder Lamm started toward Sedalia, with the defendants, in the Ford car. About one mile west of their homes, they met the sheriff and he took charge of the defendants. An examination of the four sacks of chickens disclosed that there were twelve white plymouth rock hens in two of the sacks, and four black-barred plymouth rocks, two white leghorns, a black hen and an old white hen in the other two sacks. The two sacks containing the twelve white plymouth rock hens were "dry and cool, like they had been freshly put in." The other two sacks containing the other eight chickens were "damp and hot." Two of these chickens were dead, and the other six were "hot; in a stupor; about all in." The eighteen live chickens were turned loose in "one compartment" of Schupp's chicken house, separate and apart from his other chickens. The twelve white plymouth rock hens "went on back, to the back of the henhouse, like any other chickens would do." The other six chickens of mixed variety "couldn't do much: they were hot." They "seemed to be smothering." Mrs. Lamm and her son so testified, as to the condition of the chickens and the sacks, and as to the actions of the chickens when taken to the chicken house. Schupp testified that, when he went to his chicken house a little later that night, some of the twelve white plymouth rock hens were on the roost, and that all of these twelve chickens were on the roost the next morning, "but the other chickens was all on one side setting below." He also said that, when he let all of the chickens out of the chicken house the next morning, the twelve white plymouth rock hens were "familiar with the rest of them." It further appears from Schupp's testimony, that all of his chickens were "pure" white plymouth rocks; that, after selling thirty on July 21st, the day before the alleged theft, he counted his chickens and had eighty-six; that, after the alleged theft on July 22nd, he counted his chickens and had seventy-four, exclusive of the twelve in question; that all of the chickens kept on his place belonged to him, and that he "wouldn't take $1.50 apiece" for the twelve in question. In this connection, he said he had "the champion hen at the fair." The following question and answer is taken from his cross-examination:

"Q. I say, the only way you identify those chickens as being your chickens, *they looked like your chickens and they were on the the roost?* A. *Yes, sir."*

The defendants offered no evidence except the testimony of Ernest Bryant and Orvin Bryant, brothers. In substance, these two witnesses testified that, on or about July 22, 1927, about nine o'clock P. M., they saw the defendant Barker in Sedalia, with another man

whom they afterwards learned was the defendant Stout; that, while their car was stopped in the east section of Sedalia, the defendants passed them in an old Ford touring car, headed east on State Highway No. 50; that they followed the defendants' car, about 150 yards behind, to the junction of the highway and the Smithton road, near Smithton; that the defendants' car continued going east on the highway and they turned off on the road leading into Smithton; that they were not certain as to the date of this occurrence, but they remembered that, a few days after this occurrence, they read a newspaper story of the arrest of the defendants on a charge of stealing chickens.

I. It is contended that the evidence is not sufficient to sustain the conviction of the defendants in this case. We do not agree with counsel in this contention. At short intervals, the squawking of chickens was heard at Schupp's chicken house, again in the meadow east of the chicken house, and again in the vicinity of the Ford car which was standing on the side of the highway. Then a car door was slammed and the Ford car started east. The occupants of the Ford car increased the speed of their car when commanded to stop, and it required a hot chase and three loads of hot shot to convince them that their attempt to escape was hopeless. In their flight, they threw four sacks of chickens from their car. It was the same Ford, with no rear license plate and no tail light, which had been observed by the Lamm family a short while before, standing about 120 yards east of Schupp's premises. The defendant Stout was identified as the man who was sitting in the Ford car at that time, wearing a "light looking" cap and a blue shirt. The defendant Barker was with Stout in the Ford car when it started east and at the time of the capture. In two of the sacks mentioned, twelve white plymouth rock hens were found. These twelve chickens were fresh and the sacks "cool and dry." This means that they could not have been in the sacks long on a midsummer night. Schupp had only white plymouth rock chickens on his premises. By actual count, he had eighty-six before and seventy-four after the alleged theft, exclusive of the twelve in question. When turned loose in Schupp's chicken house, these twelve chickens "went on back, to the back of the henhouse." Later that night, some of them were on the roost, and all of them were on the roost the next morning, "but the other (captured) chickens was all on one side setting below." When turned out of the chicken house the next morning, these twelve chickens were "familiar with the rest of them." In other words, they seemed to be at home, and were so treated by Schupp's flock. This method of identifying chickens,

based upon common knowledge and experience, has been repeatedly upheld by this court. There being sufficient evidence to support the finding that these chickens belonged to Schupp, it necessarily follows, from the undisputed facts, that they were stolen and that the defendants failed to satisfactorily explain their possession of recently stolen property. Moreover, the testimony of the defendants' witnesses tends to show that the defendants were riding in an old Ford car in the vicinity of Smithton about an hour or two before they were caught, in that vicinity, with the chickens in question. It is our conclusion that a case was made for the jury, and that the verdict is amply supported by circumstantial evidence. [State v. Standifer, 316 Mo. 49, 289 S. W. 856; State v. Dummitt (Mo. Sup.), 2 S. W. (2d) 731.]

II. It is also contended that the trial court erred in giving the State's instructions numbered 1, 3, 4 and 5. Instruction 1 is attacked on the ground that there was no evidence upon which to base it. By this instruction, which followed the language of the information, the jury was authorized to convict the defendants upon finding all facts necessary to establish the offense charged as defined by the statute. [Sec. 3314, R. S. 1919.] Our conclusion on the sufficiency of the evidence fully answers the attack made on this instruction. It is charged that Instructions 3, 4 and 5 were misleading, but we are unable to find anything in these instructions by which the jury could have been misled. In Instruction 3, the court properly defined direct and circumstantial evidence and advised the jury that—"Crime may be proven by circumstantial evidence, as well as by direct testimony of eyewitnesses; but the facts and circumstances in evidence should be consistent with each other and with the guilt of the defendants, and inconsistent with any reasonable theory of defendants' innocence." In Instructions 4 and 5, the court correctly declared the law as to the legal presumption of the defendants' innocence and as to the rule of reasonable doubt. All three of these instructions were in approved form. [State v. Bauerle, 145 Mo. l. c. 16, 46 S. W. l. c. 612; State v. Judge (Mo. Sup.), 285 S. W. l. c. 721.] They were in perfect harmony with all of the other instructions, and, unquestionably, they were beneficial, rather than harmful, to the defendants.

III. The defendants further assert that the prosecuting attorney, Mr. Couey, and the special prosecutor, Mr. Lamm, made improper

1180

and prejudicial remarks in addressing the jury. These alleged remarks which are quoted in the motion for a new trial and referred to in defendants' brief, are not preserved in the bill of exceptions, and, for that reason, the complaint concerning them will not be considered. [State v. Newman (Mo. Sup.), 289 S. W. l. c. 833.] The bill of exceptions does preserve for our review certain remarks made by Mr. Couey and Mr. Lamm in their arguments to the jury, and while, in our opinion, some of such remarks were improper, we do not think they were prejudicial, considering all of the facts and circumstances in evidence. Not being prejudicial, they furnish no justification for a reversal. [State v. Griffin (Mo. Sup.), 6 S. W. (2d) l. c. 868; State v. Harmon (Mo. Sup), 317 Mo. l. c. 360, 296 S. W. l. c. 400.]

The information and the verdict are sufficient in form and substance, and we find no reversible error in the trial proceedings. The judgment is affirmed. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.