STATE of Missouri, Respondent,

v.

James Henry ROLLINS, Appellant.

No. 53933.

Supreme Court of Missouri,
Division No. 2.

Jan. 12, 1970.

**586**

John C. Danforth, Atty. Gen., Thomas L. Patten, Asst. Atty. Gen., Jefferson City, for respondent.

Shaw, Hanks & Bornschein, Charles M. Shaw, Clayton, for appellant.

DONNELLY, Presiding Judge.

Appellant, James Henry Rollins, was convicted of dispensing marijuana under § 195.020, RSMo 1959, V.A.M.S., by the Circuit Court of Boone County, Missouri, and his punishment was assessed at imprisonment in the custody of the State Department of Corrections for a term of five years. Following rendition of judgment and imposition of sentence an appeal was perfected to this Court.

According to the evidence adduced by the State, on the evening of March 5, 1967, Sharon Turner was entertaining a boyfriend, Larry Duncan, at her apartment at 1105 Locust Street in Columbia, Missouri. At approximately 10:30 to 11 p. m., appellant appeared at the front door at 1105 Locust Street and inquired of Sharon Turner as to whether her roommate, Mary Monsees, was home. Sharon Turner testified that she recognized the person at the door as appellant. Sharon Turner testified

that she told appellant that Mary was not home, and that appellant left a bag and told Sharon to give it to Mary when Mary got home.

Larry Duncan testified that he followed Sharon Turner down the stairs to the front steps and that he could see the person at the door and could identify appellant as that person; that he saw the package handed to Sharon Turner; that after appellant left, he opened the package and noticed that it resembled roots and weeds; that he smoked some of it; and that he preserved a sample of the roots and weeds and put the sample in an envelope. The original bag was placed in Mary Monsees' room.

Mary Monsees testified that she arrived back at her apartment at 1105 Locust Street at about 12:15 a. m., March 6, 1967; that after she arrived home Sharon Turner told her Jim Rollins had been by and wanted her to call him, and that Jim Rollins had left a package for her; that Mary then called appellant, whom she referred to as "Jimmie," from a telephone in her apartment, and that "Jimmie" answered and she knew it was "Jimmie" because she knew his voice on the telephone; and that "Jimmie" asked her, "Did you get the package that I left for you?"

Don Christian, a detective on the Columbia, Missouri, Police Department, testified that on March 6, 1967, he received an envelope from Larry Duncan; that the contents of the envelope were analyzed by the Missouri State Highway Patrol; and that, based upon this analysis, he secured a search warrant and seized the package left in Mary Monsees' room at 1105 Locust Street.

Afton Ware, a chemist for the Missouri Highway Patrol, who conducted a qualitative analysis of the contents of the package seized at 1105 Locust Street, identified the contents as cannibis sativa, also known as marijuana.

Appellant testified and denied any participation in the crime. Alibi witnesses testified in behalf of appellant.

Appellant first alleges that the trial court committed prejudicial error when it refused to grant appellant a continuance because of alleged prejudice against him among the inhabitants of Boone County at the time of trial.

In Sheppard v. Maxwell, Warden, 384 U.S. 333, at 362 and 363, 86 S.Ct. 1507, at 1522, 16 L.Ed.2d 600, the Supreme Court of the United States said:

"Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. And appellate tribunals have the duty to make an independent evaluation of the circumstances. Of course, there is nothing that proscribes the press from reporting events that transpire in the courtroom. But where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity."

In State v. Spica, Mo.Sup., 389 S.W.2d 35, at 41, this Court said:

"The trial court has a wide discretion in determining whether an accused is entitled to a continuance on the ground that publicity concerning the case has been such to prevent a fair and impartial trial. State v. Golden, 353 Mo. 585, 183 S.W.2d 109, certiorari denied, 324 U.S. 874, 65 S.Ct. 1013, 89 L.Ed. 1427, Finnigan v. United States, 8 Cir., 204 F.2d 105, certiorari denied, 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347. This necessarily is so because the trial court is in a much better position to determine the propriety of a postponement of the trial on this ground than an appellate court, and for this reason 'it requires a very strong showing to induce the higher court to interfere.' State v. Golden, supra, 183 S.W.2d at p. 113. 'As a

general rule, and in the absence of extraordinary or unusual circumstances, public excitement or prejudice is not of itself a sufficient cause for the continuance of a criminal case, at least where such excitement or prejudice is not such as to prevent a fair and impartial trial. The mere fact that there has been widespread adverse pretrial publicity about accused does not, by itself, establish the reasonable probability that accused cannot obtain a fair and impartial jury at the trial so as to entitle him to a continuance. In the vast majority of such cases the proper procedure is not to postpone the trial, but to proceed to trial and to determine on the voir dire of the panel and the individual talesman whether a fair and impartial jury can be selected.' 22A C.J.S. Criminal Law § 497. * * *." The Missouri cases are collected in Annotation, 39 A.L.R.2d 1314.

Appellant's position is stated in his brief as follows:

"It shouldn't be denied that Appellant was * * * a well known and controversial Negro student at the University of Missouri, at Columbia, militantly active in the civil rights movement * * *. He was, unquestionably, the subject of much notoriety in the news media and from the inception of his prosecution, received a plethora of notoriety relative to the charge.

"The prosecution could hardly have picked a more convenient day, assuming that it did not, to set the cause at bar for trial, because, by fate, if not design, the trial was set on March 19, 1968, the same date as the racially charged election on the 'Fair Housing Bill.' At the risk of going outside the record, Appellant offers the observation that there were few residents of Boone County or of Columbia, Missouri, that did not have some opinion either on the 'Fair Housing Bill' or on the guilt or innocence of Appellant, but if outside the record it's a fair inference.

"For some four months prior to March 19, 1968, the news media of Columbia, Missouri, and surrounding environs carried racially controversial advertisements, editorials, and news reports relative to the upcoming election. Some of these items that appeared in the news media associated the Defendant with notorious disturbers of the peace and anarchists who had no connection whatsoever with the cause at bar, but whose very names were inflammatory in nature, so as to deprive Defendant of any opportunity for a fair and impartial hearing. This swirling controversy reached a crescendo on March 19, 1968, the very date that James H. Rollins was to be tried in the Circuit Court of Boone County, Missouri. The question before us is, whether compelling Defendant to proceed to trial on that date and in that atmosphere, deprived the Defendant of that objectivity and impartiality which is the absolute basis of a fair trial. Counsel for Appellant strongly feels that it did."

We do not agree. We have reviewed the record and exhibits, have independently evaluated the circumstances, and cannot say that the trial judge abused his discretion in overruling appellant's motion for continuance. Appellant's attorney admitted at the trial, and on the record must concede, that the setting of the case for trial on the same date as the election was accidental. Appellant was given full opportunity to screen the jurors on voir dire and all challenged jurors were excused. Appellant did not move for a change of venue. He announced ready for trial after his motion for continuance was overruled. In all of these circumstances, his contention is without merit.

■ Appellant next contends the trial court committed prejudicial error in refusing to declare a mistrial. The incidents complained of are as follows:

ON VOIR DIRE:

"MR. SHAW: If chosen to sit on the panel, you know of no reason why you couldn't give either party a just, fair and impartial trial?

MR. PLATZ: I'd like to be excused because. * * *

MR. SHAW: Now, don't say it.

MR. PLATZ: I'm not trying to get out of anything, but I've had bad experiences with marijuana in the Army. I had troops who got ahold of it and it wasn't good. I have a son-in-law who is in school at the University and we discussed this thing. I'm very bitter against it and from what you said, I don't think that I can. * * * I would make a good juror in this case.

MR. SHAW: I'm going to ask that the jury, and the entire panel be discharged and a mistrial declared, Your Honor.

THE COURT: No, the request will be denied, the voluntary statement of the member of the panel will be disregarded by the jury. Mr. Platz, I am going to excuse you for cause."

* * * * * *

"ON VOIR DIRE:

MR. SHAW: If you're chosen to sit on this panel and irrespective of how you may feel when all the evidence is in, you wouldn't change, sacrifice or modify your opinion just to go along with the other people?

MRS. HEIBEL: No, but I must tell you that because of the Defendant's political activities that I am inclined to have prejudice towards him on just about any count.

MR. SHAW: Your Honor, I am again going to ask that the jury be discharged and a mistrial declared. This has been the third time that matters prejudicial to the Defendant has been raised. It would appear that due to the present atmosphere of the voting taking place today and the statement as honestly made by the present juror that the Defendant could not at this time get a just, a fair and impartial trial.

THE COURT: The request for mistrial will be denied. You may be excused, Mrs. Heibel. The jury will disregard any voluntary statement made by that juror or any other juror.

* * * * * *

"ON REDIRECT EXAMINATION OF WITNESS MARY MONSEES:

Q. Mr. Shaw asked you if Mr. Rollins ever talked about marijuana, did you ever see Mr. Rollins use marijuana? A. Only once.

Q. You only saw him use it once? A. Yes.

Q. When was that? A. I don't recall when it was, it was sometime during the year.

Q. Was it prior to March the 5th? A. Yes.

Q. Was this at Mr. Rollins' apartment or at John Adago's apartment? A. It was at John Adago's apartment.

Q. It was at John Adago's apartment? A. Yes.

Q. And who was present? A. Just the three of us.

Q. Just the three of you, you and Mr. Rollins and Mr. Adago? A. Yes.

Q. Mr. Adago, I believe was arrested last Spring by the Federal Government, wasn't he?

"MR. SHAW: Now, if Your Honor please, I'm going to ask that the jury be discharged and a mistrial declared. That is by far the worst violation of any sort of legal procedure I've ever heard of. We don't * * * I'm going to ask again that the jury be discharged and a mistrial declared. Mr. Adago or whoever he is has nothing to do with this case.

THE COURT: Objection be sustained, a mistrial will be denied. The jury will disregard that question.

**590**

\* \* \* \* \* \*

"ON CLOSING ARGUMENT BY COUNSEL FOR THE STATE:

MR. CONLEY: I knew about this abortion prior \* \* \* I knew about this abortion prior to this trial and I told Sharon that she had to tell the truth \* \* \*

MR. SHAW: (INTERRUPTING) Well, now just a second. I'm going to ask that the jury be discharged and a mistrial declared.

THE COURT: The request for a mistrial will be denied. However, the jury will disregard that statement by the Prosecuting Attorney."

Appellant urges that the incidents set forth above, individually and cumulatively, dictated the declaration of a mistrial. In State v. Camper, Mo.Sup., 391 S.W.2d 926, at 927 and 928, this Court said:

"The declaration of a mistrial is a drastic remedy, and the power of a trial court in this respect 'should be exercised only in extraordinary circumstances,' State v. James, Mo., 347 S.W.2d 211, or stated another way, a mistrial should be granted only when the incident is so grievous that the prejudicial effect can be removed no other way. For this reason the declaration of a mistrial necessarily and properly rests largely in the discretion of the trial court who has observed the incident giving rise to the request for a mistrial, and who is in a better position than an appellate court to evaluate the prejudicial effect and possibility of its removal by action short of a mistrial. The proper function of an appellate court in the situation we have before us is to determine whether as a matter of law the trial court abused its discretion in refusing to declare a mistrial, \* \* \*."

We have reviewed the *entire* record on appeal and do not believe "that it may be said that the appellant's right to a fair trial has been infringed or that the trial court abused its discretion in refusing to \* \* \* declare a mistrial." State v. Weidlich, Mo. Sup., 269 S.W.2d 69, 71; State v. Scott, 359 Mo. 631, 223 S.W.2d 453; State v. Adamson, Mo.Sup., 346 S.W.2d 85; State v. Frazer, 363 Mo. 77, 248 S.W.2d 645. Appellant's contention is denied.

Appellant next contends the trial court committed prejudicial error when it submitted to the jury Instruction No. 4 on circumstantial evidence because the case "completely involved direct testimony." The contention is without merit. The instruction was in approved form. State v. Bauerle, 145 Mo. 1, 46 S.W. 609; State v. Burrage, Mo.Sup., 418 S.W.2d 101. The instruction was beneficial, not harmful, to the defendant. State v. Barker, 322 Mo. 1173, 18 S.W.2d 19.

Appellant next contends Instruction No. 8 was prejudicially erroneous because it fixed the range of punishment "at imprisonment in the penitentiary for a term of not less than two years nor more than twenty (20) years, or by confinement in the Boone County Jail for a term of not less than six months nor more than one year." Appellant contends that the penalty for violation of § 195.020, RSMo 1959, V.A.M.S., is "not less than five years nor more than life imprisonment" under § 195.200, Subsec. 1(4), RSMo 1959, V.A.M.S. We agree. Appellant was charged with dispensing marijuana. "Dispense" includes "deliver." Section 195.010, Subsec. (9), RSMo 1959, V.A.M.S. Section 195.200, RSMo 1959, V.A.M.S., reads in part as follows:

"1. Any person violating any provision of this chapter is punishable as follows:

\* \* \* \* \* \*

"(4) For the offense of selling, giving or *delivering* any narcotic drug to a person, by imprisonment in a state correctional institution for a term of not less than five years nor more than life imprisonment; except, that if the person to whom a narcotic drug was sold, given or delivered was

under the age of twenty-one years, then the offender may be punished by death." (Emphasis ours.)

The instruction should have fixed the range of punishment at "not less than five years nor more than life imprisonment." However, appellant may not complain. The error was favorable to appellant. Cf. State v. Marshall, 317 Mo. 413, 423, 424, 297 S.W. 63, 68.

Appellant next contends that the "jury should have been instructed that no parole, probation, suspended sentences, or any other form of judicial clemency would be exercised in the event of conviction * * *." See § 195.200, Subsec. 1(4), RSMo 1959, V.A.M.S.

■ In State v. Cornett, Mo.Sup., 381 S.W.2d 878, at 881, this Court held that "it is error for the trial court to inform the jury that the sentence imposed by its verdict may be diminished by parole or some similar procedure not administered by the judicial branch of government." We now hold that it is not error for the trial court to fail or refuse to inform the jury that no parole, probation, suspended sentences, or any other form of judicial clemency would be exercised in the event of conviction. See Zell v. State, 189 Ind. 433, 127 N.E. 1, 9 A.L.R. 336; Commonwealth v. McNeil, 328 Mass. 436, 104 N.E.2d 153. The question of future clemency is extraneous to a proper determination of issues of guilt and punishment by the jury. It should be of no concern to them. Appellant's contention is without merit.

■ Appellant finally contends the trial court committed prejudicial error when it submitted to the jury Instruction No. 10 on alibi because, he alleges, it shifts the burden of proof to defendant. Of course, the burden is on the State to prove defendant's presence, and instructions pertaining to alibi should not place the burden of proving the alibi on the defendant. State v. Hubbard, 351 Mo. 143, 171 S.W.2d 701; Johnson v. Bennett, Warden, 393 U.S.

253, 89 S.Ct. 436, 21 L.Ed.2d 415. However, in our opinion, the instruction did not shift the burden of proof to defendant. It told the jury that it was their duty to find defendant not guilty if they had "a reasonable doubt as to whether the Defendant was present when the crime was committed." Instruction No. 10 is identical with Instruction No. 8 given and approved in State v. Knicker, Mo.Sup., 366 S.W.2d 400, 404 [8]; State v. Durham, Mo.Sup., 418 S.W.2d 23, 32. Appellant's contention is without merit.

The judgment is affirmed.

All of the Judges concur.