STATE of Missouri,
Plaintiff-Respondent,

v.

Calvin HANSON, Jr.,
Defendant-Appellant.

No. 11001.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 29, 1979.

Motion for Rehearing or to Transfer to
Supreme Court Denied Sept. 20, 1979.

Application to Transfer Denied
Nov. 14, 1979.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Brenda F. Engel, Richard F. Engel, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

David R. Fielder, Fielder & Jones, Springfield, for defendant-appellant.

GREENE, Judge.

On April 13, 1977, defendant Calvin Hanson, Jr., after jury trial, was convicted of the crime of capital murder in violation of § 559.009.[1] By reason of such conviction, defendant was thereafter sentenced by the trial court to life imprisonment with no possibility of parole for 50 years, pursuant to § 559.011, which statute was in force at the time of sentence. Defendant then filed this appeal. We affirm.

The basic facts in the case are as follows. On July 5, 1976, Ollie Adkins, the victim, left his home in Pacific, Missouri, between 9 and 10 a. m. He was going to Springfield, Missouri, on a business trip. He took at least $200 in cash with him for expenses and emergencies. He was driving his Dodge truck. His wife, Stella, never saw him alive again.

At about 6:45 p. m., on the same date, Mrs. Hollis Young was in her home, located just north of the 3200 block of East Kearney in Springfield. Mrs. Young heard dogs barking and voices coming from the rear of her home. She went outside and saw two men struggling. The men were some 400–450 feet from her. One man had light hair. The other man was taller and had dark hair. The dark-haired man struck the light-haired man, who then fell to the ground. The dark-haired man then leaned over, struck the other man with something several times and began to drag him into some brush. Mrs. Young then called the police. She had not seen the men arrive, did not see any motor vehicle, did not see any weapon, and could not identify defendant as one of the two men.

Officer Bill Dennis, of the Springfield Police Department, went to the crime scene in response to Mrs. Young's call. He talked with Mrs. Young and searched the area where the struggle had taken place. He found two pieces of paper, a set of car keys, and a driver's license belonging to the victim. One of the pieces of paper had the name "Dick Hanson" and a phone number written on it. The area showed signs of a struggle and a considerable amount of blood. Officer Dennis followed a trail through the grass for a short distance and found the body of Adkins. Adkins' body bore numerous stab wounds, his right rear

---

1. All statutory references, unless otherwise indicated, are to RSMo Supp.1975, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

pants pocket was turned inside out, and his wallet was gone.

Dr. Busiek, the Greene County Medical Examiner, was called to the scene. He pronounced Adkins dead. The body was then taken to Cox Medical Center where an autopsy was performed by Dr. Robert Lovett. The examination revealed nine stab wounds in Adkins' body, most of which were in the chest or abdomen. Dr. Lovett testified that death was caused by the stab wounds and the ensuing loss of blood. He stated that the stab wounds were consistent with having been inflicted by a knife of the same general size and shape as state's exhibit 8 (the knife found on defendant's person when he was arrested). Dr. Lovett then took a blood sample from the body of Adkins which, on analysis, was found to be type A.

News of the killing reached the local news media and details, as were known at the time, were reported by a local television station. At about 9:30 p. m. on July 5th, an informant, who had seen the television broadcast, called Detective William Lloyd. Lloyd and Sgt. Bob Humphrey, both of the Springfield Police Department, went to the informant's home. The informant told them that he had seen the defendant hitch-hiking near the crime scene earlier in the evening and that he had picked him up. He said that Hanson had blood on his clothing and was armed with a knife, which was located somewhere on his lower leg in a scabbard. The informant had given Lloyd information in the past that turned out to be reliable. Lloyd then checked Hanson's name for a prior criminal record and found that he had previously been involved in stabbing/robbery incidents in Polk and Pulaski Counties. Based on this information, a pickup was ordered for Hanson.

The defendant was arrested about 1 a. m. on July 6, 1976, on the parking lot of the Repair Shop Lounge by Police Officer Don Pippin. Pippin read Hanson his *Miranda* rights and then conducted a pat-down search of his person. He found a knife in a sheath taped to Hanson's lower right leg. Pippin took the knife (state's exhibit 8) to Donald Smith, Director of the Region Two Crime Laboratory. Smith examined the knife and found that it had fresh human blood on it. The blood was type A, with a PGM factor of 1. This finding corresponded with the test that had been made of the victim's blood.

After his arrest, Hanson told Detectives George Brinkman and Tony Glenn that he had been driving a truck on July 5, and that he had been involved in an accident. He said he did not know the name of the owner of the truck. Hanson admitted that the knife found on his person at the time of arrest was his, and that it had not been in the possession of anyone else for the past 2 years. He said there should not be any blood on the knife. Hanson denied any involvement in the crime.

After Hanson's arrest, a blood sample was taken from his finger by Don Smith. The sample was taken with the consent of Hanson. Smith, a trained technician, made an analysis of the blood sample. The sampling and testing were done under controlled laboratory conditions. In his opinion, Hanson's blood type was O.

As news of the murder spread, the police received more information. Gertrude Osbourne was the owner of the Quest Lounge located at 1810 East Kearney in Springfield. She said that Hanson had been in her lounge on the afternoon of July 5th with Joe Graves. Kenneth and Roseann Bass were school teachers in the Springfield school system. At about 6 p. m., on the evening of July 5th, they were stopped at the intersection of Kearney and Glenstone, waiting for the traffic light to change. They saw a hitchhiker standing on the southwest corner of the intersection. Later, when they saw television accounts of the murder, which included a picture of Hanson as the prime suspect, they both recognized that he was the hitchhiker, and identified him as such in court.

George and Barbara Innes were returning from a family outing at Fellows Lake, north of Springfield, about 6:30 p. m. on July 5th. They also stopped at the intersection of Glenstone and Kearney. A truck,

with an "unusual" looking tank of some sort on the truck bed, was stopped in front of them. The truck and the Innes car both turned east on Kearney. The truck stopped to pick up a hitchhiker near the intersection. In court, they identified photographs of the victim's truck as the truck that had stopped for the hitchhiker, and they testified that the hitchhiker was the defendant.

On July 5, at about 7 to 7:15 p. m., Rodney Stone, a 15 year old high school student, was riding his bicycle in front of his farm home, located on Farm Road 199, one-quarter mile from East Kearney Street, when he saw a truck, which he identified in court as the truck pictured in state's exhibits 15, 16 and 17 (the victim's truck), come down the road and strike a concrete post. He "got a good look at the guy who came out of the truck". Rodney went home and told his father of the incident. His father then called the sheriff's office. Deputy Sheriff Barry Alexander came to the scene and photographed the truck. The defendant had left the scene before Alexander arrived. In court, Rodney identified defendant as the person who was driving the truck at the time of the accident.

On appeal, defendant makes 12 assignments of error, which are discussed in the order in which they appear in defendant's brief.

## POINT I

The first assignment of error is that the trial court erred in failing to sustain defendant's first amended motion to dismiss the information for the reason that § 559.-011 [2] was unconstitutional, in that the sentence prescribed by the statute constituted cruel and unusual punishment.

Section 559.011 was in force at the time of the murder and at time of trial. Statutes are presumed to be valid unless declared otherwise by the courts. The supreme court, in State v. Duren, 547 S.W.2d 476, 480–481 (Mo. banc 1977), decided March 15, 1977, ruled that § 559.011 was a valid

statute which provided an alternative punishment to death for crimes of this class. Since the statute was valid, and since it set statutory limits on punishment, the sentence here, which conformed to those limits, cannot, as a matter of law, be held to be cruel and unusual punishment. State v. Grimm, 461 S.W.2d 746, 754 (Mo.1971). The assignment of error is denied.

## POINT II

The second assignment of error is that the trial court erred in failing to sustain defendant's first amended motion to dismiss for the reason that the sentencing of defendant under the provisions of § 559.011, constituted the application of an ex post facto law in violation of Article I, Sections 10 and 13 of the Missouri Constitution and Article I, Section 10 of the United States Constitution.

The homicide in this case occurred on July 5, 1976. Section 559.011 was enacted in 1975 and declared valid in State v. Duren, supra, on March 15, 1977. Defendant was tried on April 11, 1977 and was sentenced on June 3, 1977, with the formal judgment being filed on June 6, 1977. There was no application of an ex post facto law in this case. The statute in question had been enacted before the date of the crime, and had been declared valid by the supreme court in Duren, before defendant was sentenced under its provisions. The assignment of error is denied.

## POINT III

The third assignment of error is that the trial court erred in submitting Instruction No. 5 to the jury, for the reason that said instruction failed to set forth the fact that if the jury found defendant guilty, and fixed his punishment at life imprisonment, he would have no possibility of parole for 50 years, and that the failure to so instruct was a denial of defendant's constitutional rights under Article I, Sections 10 and 18(a)

2. § 559.011 provided that if the death penalty provisions of the capital murder statute in force at that time were declared to be unconsti-

tutional, the alternative punishment for capital murder would be life imprisonment with no possibility of parole for 50 years.

of the Missouri Constitution and Amendments 5 and 6 of the United States Constitution.

The trial court instructed the jury, in Instruction No. 5, as follows:

"If you find and believe from the evidence beyond a reasonable doubt: First, that on or about July 5, 1976, in the County of Greene, State of Missouri, the defendant caused the death of Ollie Adkins by stabbing him and (s)econd, that the defendant intended to take the life of Ollie Adkins, and (t)hird, that the defendant knew that he was practically certain to cause the death of Ollie Adkins, and (f)ourth, that the defendant considered taking the life of Ollie Adkins and reflected upon this matter coolly and fully before doing so, then you will find the defendant guilty of capital murder. However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, then you must find the defendant not guilty of that offense. If you do find the defendant guilty of capital murder, you will fix his punishment at life imprisonment by the Division of Corrections."

The instruction was MAI–CR 6.02, as modified in accordance with Rule 20.02(d), which provides that where a MAI–CR form must be modified, the modification must be simple, brief, impartial, and free from argument. The modification consisted of changing the punishment from death to life imprisonment. This modification was necessary in view of the holding in *State v. Duren*, supra, that the death penalty provision of § 559.009(3) was unconstitutional.

Defendant fails to explain, in his point relied on or the argument supporting his point, wherein and why the failure of the trial judge to tell the jury that, if they found defendant guilty under Instruction No. 5 and fixed his punishment at life imprisonment, he had no possible hope of parole for 50 years, was prejudicially erroneous. This violation of the tenets of Rule 84.04(d) precludes review on this point, unless we consider the point under the plain error rule, Rule 27.20(c).

It is true that a defendant is entitled to have the jury correctly and fully informed as to the various punishments that might be assessed. *State v. Bevins*, 328 Mo. 1046, 1052, 43 S.W.2d 432, 435 (banc 1931). It is likewise true that failure to instruct the jury as to maximum or minimum punishments is prejudicial error. *State v. Duddrear*, 309 Mo. 1, 5, 274 S.W. 360, 361 (1925); *State v. Hurt*, 285 S.W. 976, 976 (Mo.1926). However, none of those decisions involve the question of whether or not the jury should have been told, at the time of trial, that under the law and the instructions in force at that time, the defendant would not be paroled for at least 50 years, if they found him guilty of capital murder.

Defendant, by implication, argues that had the jurors been aware of the preclusion of parole opportunities, they might have been less willing to convict him of capital murder with its mandatory penalty of life imprisonment. This argument does not hold water. In the first place, the jury was instructed not only as to capital murder, but also as to the lesser homicide degrees of second degree murder and manslaughter. The instructions were complete. The jury was well aware of the significance of their task and the alternatives available to them. They resolved the question by the verdict that they returned.

Secondly, courts have traditionally been reluctant to inject the question of the possibility or impossibility of parole into guilt determinative instructions. In *State v. Rollins*, 449 S.W.2d 585 (Mo.), cert. denied, 399 U.S. 915, 90 S.Ct. 2220, 26 L.Ed.2d 573 (1970), the same argument was advanced as is used here. In *Rollins*, defendant was convicted of dispensing a controlled substance under § 195.020, RSMo 1959. The penalty section for such conviction was § 195.200(1), (4), RSMo 1959, which provided that no parole or probation was to be exercised in behalf of persons punished under certain sections of the statute. Upon conviction, Rollins urged that failure to instruct the jury that no parole or probation would be available to him, if convicted, was

prejudicial error. The court rejected the argument and held that it was not error for the trial court to fail or refuse to inform the jury that no form of probation or parole would be exercised in the event of conviction, stating that the question of future clemency was extraneous to the issue of guilt.

It is true that the new 15.00 MAI–CR series, which applies to homicides committed after May 25, 1977 (which is not the case here), provides that *in the second stage* of a capital murder trial, the jury after a finding of guilt in the first stage proceeding, is told that if they reject the death penalty, they will return a verdict of life imprisonment with no possibility of parole for 50 years. However, present practice, via the two stage proceeding, is an entirely different kettle of fish from the case at bar. Under present practice, guilt has already been determined by the jury, absent the possible murky effect of the injection of the parole syndrome into the guilt determination process, before they decide the question of punishment. Here, defendant's guilt or innocence and his punishment, if found guilty under the law as it was at that time, had to be determined by the jury in a one stage proceeding. The extraneous issue of parole or probation had no bearing on the issue of defendant's guilt. Instruction No. 5 was proper. The assignment of error is denied.

## POINT IV

The fourth assignment of error is that the trial court erred in admitting into evidence state's exhibits 18, 19 and 20, over the objection of defendant, for the reason that the exhibits were inflammatory, prejudicial, and of no overweighing probative value.

The challenged exhibits were photographs taken of defendant at the time he was booked at the Springfield Police Station. They showed his general appearance and the manner in which he had taped the knife and sheath to his leg. Photographs are admissible in criminal cases where they help to establish relevant facts or where they tend to clarify or corroborate the testimony of witnesses. *State v. Johnson*, 539 S.W.2d 493, 517 (Mo.App.1976), cert. denied, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977). Trial courts have wide discretion in determining the admissibility of such photographs. *State v. Jackson*, 499 S.W.2d 467, 472 (Mo.1973).

The photographs were relevant and probative on the question of identity. They allowed the jury to compare the oral testimony of descriptions of defendant's appearance, and of the finding of the knife and scabbard taped to defendant's leg, with the photographs, to see if the exhibits corroborated such testimony. There was no error in the admission into evidence of state's exhibits 18, 19 and 20.

## POINT V

The fifth assignment of error is that the trial court erred in admitting into evidence state's exhibit 8 (the knife), which was the alleged murder weapon, for the reason that no proper chain of custody was shown from the time it was taken from defendant's person until the time that it was admitted into evidence.

Chain of custody is an irrelevant issue where, as here, the objects in question are positively identified, and the objects themselves, rather than their condition, are the significant factor. *State v. Coleman*, 441 S.W.2d 46, 51 (Mo.1969); *State v. Russ*, 537 S.W.2d 216, 218 (Mo.App.1976). Officer Pippin positively identified state's exhibit 8 as the knife which he took from defendant's person, when he arrested him, and as the knife that he then took to the crime laboratory. Esther Scurlock, defendant's mother, also identified the knife as belonging to her son.

Don Smith, the laboratory director, testified that he had purposely broken the knife handle, during his examination of it, in order to test the hilt area for the presence of bloodstains. The procedure was necessary and was proper police practice. This did not constitute tampering with the evidence to the extent that the "chain of

custody" was legally destroyed. See *State v. Baines,* 394 S.W.2d 312, 316 (Mo.1965), cert. denied, 384 U.S. 992, 86 S.Ct. 1900, 16 L.Ed.2d 1008 (1966). Even if defendant's chain of custody challenge had any merit, which we doubt, the accounting of the possession of the knife from the time it was taken from defendant until the time of trial, including the explanation as to why the knife handle was broken, provided reasonable assurance, and supported the inference, that the knife taken from the defendant and examined by Don Smith was the same knife that was admitted into evidence as state's exhibit 8. There was no error in the admission into evidence of the exhibit in question.

### POINT VI

The sixth assignment of error is that the trial court erred by refusing to compel the disclosure of the name of the confidential informant who gave Detective Lloyd information that led to the arrest of the defendant.

 Disclosure of the name of a confidential informant is required where such disclosure is relevant to the defense of the accused, essential to a fair disposition of the case, necessary to avoid the risk of false testimony, or vital to secure useful testimony. *State v. Edwards,* 317 S.W.2d 441, 446–447 (Mo. banc 1958). Whether a defendant can have a fair trial without compelling disclosure of an informant's identity is a matter addressed to the sound discretion of the trial court. *State v. Yates,* 442 S.W.2d 21, 25 (Mo.1969). The general rule, where the issue is probable cause for an arrest, is that the identity of the informant need not be disclosed if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the police officers did rely in good faith upon credible information supplied by a reliable informant. *State v. Boyd,* 492 S.W.2d 787, 791–792 (Mo.), cert. denied, 414 U.S. 1069, 94 S.Ct. 579, 38 L.Ed.2d 475 (1973); *State v. McCann,* 543 S.W.2d 504, 507 (Mo.App. 1976).

 Based on the testimony given by Detective Lloyd, outlined in the statement of facts above, it is clear that the trial court did not abuse its discretion in overruling defendant's motion for disclosure. The information supplied by the reliable informant was credible, and it was relied upon. The assignment of error is denied.

### POINT VII

The seventh assignment of error is that the trial court erred in overruling defendant's motion to suppress evidence of the results of a test made of blood taken from defendant's body at the time of his arrest, for the reason that there was no probable cause for his arrest and, therefore, the invasion of his body for the purpose of obtaining the blood sample was unconstitutional and illegal.

 There is a broad gulf between what evidence is required to prove guilt, and the evidence required to prove probable cause for a warrantless arrest. Police officers may rely on information received from a reliable informant as the basis for an arrest on probable cause, as long as that information is reasonably corroborated by other matters within the officers' knowledge. The corroboration must reduce the chance of a "reckless or prevaricating" tale. *State v. Wiley,* 522 S.W.2d 281, 287–288 (Mo. banc 1975). The information received from the informant in this case was corroborated by evidence found at the scene (the slip of paper containing the name "Hanson"), and by the information in the possession of the officers that defendant had been involved in stabbing/robbery incidents in Polk and Pulaski Counties. There was probable cause for the arrest of defendant and, therefore, the trial court did not err in overruling defendant's motion to suppress the blood sample for lack of probable cause.

 The probable cause issue is the only matter stated in defendant's point relied on. Appellate review will only be made of matters raised in the points relied on in appellant's brief. Thus, the other arguments raised in the argument portion of the brief on this point have not been preserved

for review. *State v. Hodges,* 575 S.W.2d 769, 773 (Mo.App.1978). We decline to review, under the plain error rule, Rule 27.-20(c), defendant's other arguments in his brief as to why the taking of the blood sample was illegal, as it is clear that the taking of blood was done under controlled conditions by a trained technician, with the consent of defendant. It did not violate his constitutional rights, or result in a manifest injustice or a miscarriage of justice. The assignment of error is denied.

### POINT VIII

The eighth assignment of error is that the trial court erred in overruling defendant's objection to the testimony of Don Smith for the reason that the witness lacked the training and experience to qualify him as an expert.

Don Smith testified that, based upon scientific tests he had made immediately after the arrest of the defendant, it was his opinion that defendant had blood residue on his hands, shirt, bandana, watch, knife, and scabbard. It was also his opinion that defendant had type O blood, while the blood of the victim and that found on the knife were both type A. There is no doubt that such testimony, which left the inference for the jury that defendant had recently been involved in a bloody encounter and that the blood found on him and his knife was the blood of someone else, was particularly damaging to defendant. The qualifications of the witness to give such opinions are, therefore, of utmost importance. In order to qualify as an expert, a witness must be shown to have knowledge, from education or experience, which will aid the trier of fact in forming an opinion on the subject matter of the inquiry. *State v. Harvell,* 527 S.W.2d 445, 448 (Mo.App. 1975). This knowledge may be gained by practical experience, as well as by scientific study or research. *State v. Rhone,* 555 S.W.2d 839, 841 (Mo. banc 1977). The determination of an expert's qualifications is a matter for the trial judge's discretion, and his determination that a witness is qualified will not be overturned on appeal unless the record shows a clear abuse of that discretion. *State v. Johnson,* 539 S.W.2d 493, 502 (Mo.App.1976), cert. denied, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977).

Smith had been the director of the Region Two Crime Laboratory for a period of 7 years. He spent 30 to 35 percent of his time doing laboratory work. He had attended many seminars relating to the identification and analysis of blood and had received laboratory training in that field, including training sessions held under the auspices of the F.B.I. and the Missouri Highway Patrol. This court and the Missouri Supreme Court have both held that Smith is an expert in this field and is qualified to give an opinion regarding blood identification and blood analysis. *State v. Stevens,* 502 S.W.2d 335, 338 (Mo.1973); *State v. Jones,* 518 S.W.2d 304, 311 (Mo. App.1975). Smith was qualified to give his opinion on the identification of a substance as blood and the type of blood it appeared to be. The assignment of error is denied.

### POINT IX

The ninth assignment of error is that the trial court erred in failing to sustain defendant's motion for judgment of acquittal filed at the close of all of the evidence for the reason that the evidence was insufficient, as a matter of law, to present a submissible case to the jury.

Defendant's point relied on does not state briefly and concisely why the trial court's ruling on the motion was erroneous or why the evidence was insufficient as a matter of law. The point, therefore, does not preserve anything for appellate review, Rule 84.04(d); *State v. Robinson,* 555 S.W.2d 667, 669 (Mo.App.1977), and can only be considered under the plain error rule, Rule 27.20(c).

In determining whether a case should have been submitted, the reviewing court is to regard all evidence in the record, that tends to prove defendant's guilt, and all reasonable inferences to be drawn therefrom, in a light most favorable to the ver-

dict and to disregard evidence to the contrary. *State v. Miceli,* 549 S.W.2d 113, 114 (Mo.App.1977). This is a circumstantial case. When the state's case rests on circumstantial evidence, the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence. This rule is realistically tempered with the explanation that the circumstances need not be absolutely conclusive of guilt and need not demonstrate the impossibility of innocence. *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976), cert. denied, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). Bearing this in mind, appellate courts should be reluctant to overturn a jury verdict based on circumstantial evidence, unless such verdict was premised solely on speculation or a mere suspicion of guilt and not based on competent evidence. Such is not the case here.

The evidence in this case, through a chain of circumstances, amply supports the inferences that Adkins picked up the defendant, who was hitchhiking, and that defendant shortly thereafter robbed Adkins of his money, killed him by stabbing him repeatedly with his knife, and stole his truck. Cases are legion where homicide convictions have been upheld on circumstantial evidence no stronger than we see here and, in some cases, where the evidence was weaker.[3] The assignment of error is denied.

### POINT X

The tenth assignment of error is that the trial court erred in allowing the victim's widow and family to remain in the courtroom during the trial, in violation of the invoked rule of exclusion of witnesses, because their presence in the courtroom was inflammatory and prejudicial, thereby depriving defendant of due process and an impartial jury.

3. *State v. Williams,* 515 S.W.2d 544 (Mo.1974); *State v. Damico,* 513 S.W.2d 351 (Mo.1974); *State v. Maxie,* 513 S.W.2d 338 (Mo.1974), cert.

The victim's wife, Stella Adkins, was the first witness at the trial. Her testimony was to the effect that her husband left the family home in Pacific, Missouri, between 9 and 10 a. m. on the morning of July 5, 1976, to go to Springfield, Missouri, on business; that he had over $200 on his person; that he was driving his Dodge truck; and, that she never saw him alive again. She identified the picture on the driver's license, found at the scene of the murder, as a picture of her husband. No other member of the family testified. At the conclusion of Mrs. Adkins' testimony, defendant objected to her remaining in the courtroom and also objected to the presence of the victim's family in the courtroom. The objection was overruled.

The decision as to whether witnesses should be excluded from the courtroom is discretionary with the trial court, *State v. Crider,* 419 S.W.2d 13, 14–15 (Mo. 1967), and will not be disturbed unless abused. *State v. Tummons,* 34 S.W.2d 122, 123–124 (Mo.1930). It has been held that it was not an abuse of discretion to allow the wife of a murder victim to remain in the courtroom during the trial, even though she later testified as a witness for the state. *State v. Thompson,* 338 Mo. 897, 902–903, 92 S.W.2d 892, 894–895 (1936). Here, the trial court allowed the widow to remain in the courtroom, after she had finished her testimony, with the understanding that she was not to make any visual or oral demonstrations during the trial. The record does not disclose any disturbance during the trial.

Defendant has not cited any case, and we find none, which would require, or for that matter even allow, the trial court to exclude other family members, who were not witnesses, from the courtroom, where the record does not reflect that they have caused or threatened to cause a disturbance. The trial court did not abuse its discretion in allowing the widow and the family to remain in the courtroom. The assignment of error is denied.

denied, 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 40 (1975); *State v. Miceli,* 549 S.W.2d 113 (Mo.App.1977).

## POINT XI

The eleventh assignment of error is that the trial court erred in overruling defendant's objection to the testimony of Police Officer George Brinkman regarding statements made to him by defendant after defendant's arrest, for the reason that the statements were hearsay, not the best evidence, and were taken in violation of defendant's constitutional rights.

This point relied on is defective because it does not state "wherein and why" the action of the trial court complained of was error. Rule 84.04(d). Points relied on should specifically isolate and formulate those precise issues to be reviewed, and such functions should not be relegated to the argument portion of the brief. *State v. Dennison,* 428 S.W.2d 573, 579 (Mo.1968). In the present case, defendant merely states that Brinkman's testimony was hearsay, a violation of the best evidence rule, and in violation of his constitutional rights. This mere assertion is completely inadequate to preserve those points for review. *State v. Flynn,* 541 S.W.2d 344, 349 (Mo. App.1976); *State v. Clark,* 552 S.W.2d 256, 267 (Mo.App.1977).

Any review of this point would have to be via the plain error rule. Defendant's statements to Brinkman that he had been driving a truck that had been involved in a wreck, that he did not know the owner of the truck, and that there should not be any blood on his knife, were voluntary statements made by the defendant, which tended to connect him with the crime in question and, as such, were admissible as admissions against interest. *State v. Sinovich,* 329 Mo. 909, 917, 46 S.W.2d 877, 881 (1931). None of the other arguments raised by defendant on this point, such as the defendant's statements not being the "best" evidence or that the statements were inadmissible because defendant had not been "legally" arrested before they were made, have a valid foundation, either in fact or law, and do not merit plain error review. Brinkman's testimony was according to his best recollection of what defendant told him. The best evidence rule does not apply in such situations. We have held in this opinion that there was probable cause for the arrest. The trial court did not err in admitting the testimony of Officer Brinkman. The assignment of error is denied.

## POINT XII

The last assignment of error is that defendant was denied effective assistance of counsel, when trial counsel failed to properly object to the testimony of Officer Netzer, as the officer's testimony was irrelevant, immaterial, prejudicial, and lacking in probative value.

In substance, Officer Netzer testified that he was called to the intersection of Kearney and Glenstone between 6 and 6:30 p. m. on July 5, 1976. When he arrived at that location, he found Joe Graves who was intoxicated. This tied in with the testimony of Gertrude Osbourne, who had testified that Joe Graves and the defendant had been drinking together in her bar at that location earlier in the afternoon. Netzer's testimony was, therefore, relevant and material. It was corroboration of Mrs. Osbourne's testimony that defendant had been in the immediate area of the murder on the afternoon of the killing, that he had been with Joe Graves, and that at the approximate time of the killing, defendant was no longer in the bar. While it is true that trial counsel did not object to Netzer's testimony, we fail to see where an objection would have done him any good, as the evidence was admissible, or how defendant was prejudiced by a failure to object. There is nothing in the record on this point, or any other point for that matter, to indicate ineffective assistance of counsel at the trial court level. The assignment of error is denied.

We have carefully reviewed the pre-trial and trial transcripts, totalling 658 pages, and find no prejudicial error. Defendant was given a fair trial.

The judgment is affirmed.

All concur except PREWITT, J., not participating because not a member of the court when cause was submitted.