STATE of Missouri, Respondent,

v.

Toni R. MASSEY, Appellant.

No. WD 58557.

Missouri Court of Appeals,
Western District.

Sept. 4, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 30, 2001.

Application for Transfer Denied
Dec. 18, 2001.

Susan Lynn Hogan, Appellate Defender Office, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John Munson Morris, Karen K. Kramer, Asst. Attys. Gen., Jefferson City, for respondent.

HOLLIGER, Judge.

Toni Massey was convicted of one count of drug trafficking in the first degree, § 195.222, RSMo Cum.Supp.1999, and two counts of endangering the welfare of a child, § 568.045, RSMo Cum.Supp.1999. The Honorable Vernon Scoville sentenced Massey to terms of imprisonment of ten years for trafficking and five years on each count of endangering the welfare of a child

pursuant to the jury's recommendations. Because the trafficking conviction involved a jury finding of possession of more than 90 grams, the ten-year sentence was specified to be without probation or parole. She appeals only her conviction on the drug trafficking charge.

Ms. Massey contends on appeal that the evidence was insufficient to support a conviction for trafficking involving 90 grams because there was no evidence that she possessed 90 grams of actual methamphetamine, as opposed to containers containing more than 90 grams of liquid that contained some amount of methamphetamine. Alternatively, she claims that the jury should have been informed that the difference between finding her guilty of possession of more than 90 grams as opposed to between 30 and 90 grams was that her sentence would be served without eligibility for probation or parole. Because we find that the evidence was sufficient and the trial court properly refused to further inform the jury about the terms of the sentence, the judgment is affirmed.

## FACTS

On October 1, 1999, Officer John Howe of the Independence Police Department investigated a house in response to a drug complaint. When he knocked on the door, a young boy answered. Officer Howe asked him if any adults were home. The boy went to get an adult and Officer Howe noticed, with the door open, a strong chemical odor coming from the home.

Gerald Jenkins came to the door. He was wearing a bandana over his nose and mouth. When he saw Officer Howe, he removed the bandana. He told Officer Howe that he lived at the house "on and off." When Howe asked Jenkins for identification, Jenkins told him it was in the house and he'd have to go in and get it. Howe asked for permission to enter the house with Jenkins and Jenkins obliged. Once inside the house, Howe noticed the odor was stronger. He accompanied Jenkins to a back bedroom to retrieve the ID, which Jenkins never found. At some point Howe asked for permission to look in the basement. Jenkins said that he could. Howe opened the basement door and noticed that the chemical smell was even worse. In the basement he found a methamphetamine lab, consisting of hotplates, glassware and separated liquids sitting on the table. Howe arrested Jenkins. On a table in the basement were the above-mentioned materials as well as dishes and baggies containing a white powdery substance and containers holding layered liquids. Further, there were cans of acetone and camp fuel as well as a flask of what later was determined to be methamphetamine oil. Massey's fingerprints were discovered on the flask canister and the can of camp fuel. While Officer Howe was still investigating, Massey drove up to the house and it was determined she was the owner of the home and the mother of the two boys, ages 10 and 13.

The Department of Family Services removed the boys from the residence. Howe discovered that Toni Massey was the owner of the house. A search of the house revealed between 5 and 10 syringes lying on top of the trash in the trashcans.

At the police station, Massey was interviewed after signing a waiver of her rights. During the interview, she admitted that she lived at the house with her sister and her two sons. She admitted that she was the only one who knew about the lab. She admitted setting up the lab and using methamphetamine as recently as the night before. She admitted that she knew how to cook methamphetamine, but said she hadn't done so for a while. Instead, she said, people would come to her with problems they were having with their own labs

and she would help them fix the problems in exchange for free drugs.

An investigation revealed that the total weight of liquid methamphetamine at the scene was over 1,230 grams. At trial, Massey testified that she was on methamphetamines at the time of her arrest and that someone else had set up the lab in her basement.

## SUFFICIENCY OF EVIDENCE

■ In her first point Massey contends that the evidence does not support the trafficking conviction because the State did not show that she manufactured 90 or more grams of methamphetamine but only proved that she manufactured 1230 grams of a mixture containing methamphetamine. In other words, Massey contends that the State was required to prove that the quantity of methamphetamine itself in the mixture was greater than 90 grams. The State concedes that it did not establish the amount of actual methamphetamine in the mixture and contends that under § 195.222.8 it was not required to do so.

The first-degree trafficking statute provides two authorized terms of imprisonment depending upon the quantity involved. Distribution of more than 30 but less than 90 grams is a class A Felony. Distribution of more than 90 grams[1] is also a class A felony, but the sentence is to be served without probation or parole. § 195.222.8(1)(2). The statute prohibits the distribution, delivery, manufacture or production of:

> [A]ny material, compound, mixture or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system: . . . methamphetamine its salts, optical isomers and salts of its optical isomers. (Emphasis added)

Section 195.222.8

The subsections cited above detailing the two different treatments of the Class A felony sentence also use the term **"quantity"**. ("If the **quantity involved** is more than 30 grams but less than 90 grams" or "if the quantity involved is ninety grams or more"). The issue raised by Massey is whether the term **quantity** refers to the methamphetamine or to the "material, compound, mixture or preparation" which contains some amount of the prohibited drug, no matter how slight. Massey cites no authority for her contention, instead arguing that the "plain language" of the statute indicates that the term **quantity** refers to the methamphetamine itself. We disagree.

Massey's interpretation of § 195.222 has been rejected as to other weight provisions of the statute. In *State v. Hill*, 827 S.W.2d 196 (Mo. banc 1992), the Supreme Court rejected an argument that under § 195.222.4, RSMo Supp.1989, the weight of the blotter paper containing LSD was not to be included in the weight.[2] Although Hill argued that the statute violated the due process clause if construed to punish offenders according to the weight of the blotter paper, he alternatively argued that the amount of the LSD was infinitesimal and the paper could not be considered a mixture or substance under the statute. In rejecting both arguments the Court said: "The statute adequately warned the defendant that something besides the weight of the LSD would be

---

1. Distribution of 30 grams within 2000 feet of a school or public housing, or within a motor vehicle or in a hotel or motel also carries a sentence without probation or parole. Section 195.222.8(2).

2. The statute prohibited trafficking of more than five hundred milligrams "of a mixture or substance containing a detectable amount of LSD."

considered in determining the authorized punishment. The legislature's use of 'mixture' and 'substance' indicates its disposition to punish for whatever vector an offender might choose." *Id.* at 198.

In *State v. Childress*, 882 S.W.2d 691 (Mo.App.1994), a similar argument was made about § 195.222.7, which addressed the trafficking of more than 30 kilograms "of a mixture or substance containing marijuana." The court noted that the statute "prohibits not the trafficking of more than 30 kilograms of marijuana but rather, of more than 30 kilograms of 'a mixture or substance containing marijuana.' " *Id.* at 694. In *State v. Riley*, 901 S.W.2d 92 (Mo.App.1995), the defendant argued that dirt, stems and seeds were erroneously weighed and that the 30 kilograms had to be of pure marijuana. That argument was rejected. *Id.* at 94.

 The first rule of statutory construction is to determine and give effect to the legislative intent. *State v. Withrow,* 8 S.W.3d 75, 79–80 (Mo. banc 1999). Words are given a reasonable, rather than absurd reading, and construed in a manner consistent with the legislative intent. *State v. Schleiermacher,* 924 S.W.2d 269, 276 (Mo. banc 1996). Clearly the first paragraph of § 195.222.8 prohibits distribution of more than 30 grams of material containing **"any quantity"** of methamphetamine. To accept Massey's argument would lead to an absurd and unreasonable interpretation of the statute. Under her view trafficking of more than 30 grams of material containing any but an unknown amount of methamphetamine would be prohibited, but the statute would provide no punishment unless it was shown that the quantity of pure methamphetamine was more than 30 grams (subsection 1) or more than 90 grams (subsection 2).

Massey's argument is tenuous. Under § 195.222.8, first degree trafficking is

proven if distribution of more than 30 grams of any material, compound, mixture or preparation containing any amount of methamphetamine is proven. Massey does not dispute that her guilt was proven based on this standard. She raises no other claims about the sufficiency of the evidence. The trial court did not error in denying her motion for acquittal.

## ADVISING THE JURY OF NO POSSIBILITY OF PROBATION OR PAROLE

Massey next contends that the trial court also erred in (1) not letting her advise the venire panel about the different consequences of trafficking 30–90 grams and more than 90 grams and (2) refusing her proposed Instruction No. 6 (the State's verdict director) which contained a note that any sentence for trafficking more than 90 grams would be served without probation or parole. She argues that both the denial of her request to raise the issue during voir dire and the modification of the MAI CR3d verdict director violated her statutory right to jury sentencing under § 557.036, RSMo 2000.

 Underpinning both of Massey's arguments is her contention that she had a right to have the jury informed that a sentence for the special class A felony of trafficking of more than 90 grams was to be served without probation or parole. She cites no authority for her contention that the trial court erred either in voir dire or jury instructions. In fact the Supreme Court held in *State v. Rollins*, 449 S.W.2d 585 (Mo.1970), that it was not error to refuse to inform the jury of parole, probation, suspended sentences or other forms of judicial clemency because such issues were extraneous to the jury's consideration of guilt and punishment. *Id.* at 591. Again in *State v. Olinghouse*, 605 S.W.2d 58, 68–69 (Mo. banc 1980), the court reject-

ed a claim that the veniremen should be advised that the punishment for capital murder included a 50 year prohibition of parole and probation. Based on *Rollins*, it has also been held that a trial court properly refused a request to instruct the jury as to the possibility or probation or parole for a life sentence in a capital murder charge. *State v. Hanson*, 587 S.W.2d 895, 901–02 (Mo.App.1979).

Massey has demonstrated no basis for distinguishing these holdings. Departure from them would create potentially unworkable situations where eligibility or the timing of parole release is not so certain.

For the reasons stated the convictions are affirmed.

THOMAS H. NEWTON, Presiding Judge, and JOSEPH M. ELLIS, Judge, concur.