**Ulysses Ray DECKARD,
Movant–Appellant,**

v.

**STATE of Missouri, Respondent–
Respondent.**

No. 24811.

Missouri Court of Appeals,
Southern District,
Division One.

July 30, 2003.

Ellen H. Flottman, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, and Charnette D. Douglass, Assistant Attorney General, for Respondent.

JAMES K. PREWITT, Judge.

Following jury trial, Ulysses Ray Deckard ("Movant") was convicted of second degree murder, § 565.021.1(1), RSMo 1994, and one count of armed criminal action, § 571.015, RSMo 1994, for the shooting and killing of Wade Hisey. He was sentenced to two consecutive terms of life imprisonment. His convictions and sentences were affirmed on direct appeal in *State v. Deckard*, 18 S.W.3d 495 (Mo. App.2000).

Following an evidentiary hearing, the motion court denied Movant's Rule 29.15 motion for post-conviction relief. Movant appeals that denial here and presents two points relied on, both of which allege he received ineffective assistance of counsel in violation of his constitutional rights.

■ Our review of a motion court's denial of post-conviction relief is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. *Rousan v. State*, 48 S.W.3d 576, 581 (Mo.banc 2001). Such findings and conclusions are clearly erroneous only if, after a review of the entire record, this Court is left with the definite and firm impression that a mistake has been made. *State v. Ervin*, 835 S.W.2d 905, 928 (Mo. banc 1992).

■ To obtain relief on a post-conviction claim of ineffective assistance of counsel, a movant must show, by a preponderance of the evidence, that (1) trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and that (2) trial counsel's deficient performance prejudiced the defendant. *Leisure v. State*, 828 S.W.2d 872, 874 (Mo.banc 1992); *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Movant must overcome a strong presumption that trial counsel provided competent assistance. *Leisure*, 828 S.W.2d at 874.

Movant cannot succeed on a post-conviction claim of ineffective assistance of counsel unless he demonstrates that there is a reasonable probability that without trial counsel's error, the result of the trial would have been different. *State v. Stepter*, 794 S.W.2d 649, 656 (Mo.banc 1990). Such a claim may be denied if there is no showing of prejudice. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo.banc 1987).

We summarize the facts, which are detailed in *Deckard*, 18 S.W.3d 495. Lisa Lawson, Movant's on-and-off, live-in girlfriend of several years, worked at Mazzio's Pizza in Lebanon, Missouri, where Hisey was the manager. Four months prior to Hisey's death, Movant confronted Hisey regarding Hisey's relationship with Lawson and told Hisey that "if he didn't leave Lisa alone that he would kill him."

On June 13, 1996, after Lawson had asked him to move out of the home they shared, Movant went to the home of Lawson's parents to retrieve a shotgun another member of the family had borrowed. Later that day, Movant took Lawson to work and after he returned home, Lawson's sister informed him that Hisey planned to take her and Lawson's daughter "cruising" that night. After telling Movant that information, Lawson's sister witnessed Movant take the shotgun out of the trunk of his car and place it on the front seat. He then drove to Mazzio's and asked Lawson whether the information was true; she denied knowing anything about it.

Movant then retrieved the shotgun out of his car and went inside Mazzio's. Movant confronted Hisey, yelling at him and trying to get him to go outside. Hisey's sister attempted to intervene, but Movant shoved her out of the way. Hisey reached for a phone, at which time Movant raised the shotgun to his shoulder and pointed it at Hisey's head. Movant ordered Hisey to put down the phone by stating, "[y]ou going to pick up that fucking phone, I'm going to blow your fucking head off...." Hisey placed the phone in the receiver and Movant fired the shotgun, killing Hisey.

Movant was charged with one count of murder in the first degree and one count of armed criminal action. At trial, among the instructions proffered by Movant was one that followed the form provided by MAI–CR 3d 313.10 for submission of involuntary manslaughter. The trial court refused the instruction. The jury did receive instructions patterned after MAI–CR 3d 313.02 for murder in the first degree, MAI–CR 3d 313.04 for murder in the second degree, and MAI–CR 3d 332.02 for armed criminal action.

During jury deliberations, the jurors sent several notes requesting information or clarification from the court. One of the notes read: "If a verdict was selected on murder in the second degree on life imprisonment, how long before parole is an option?" The trial court indicated its proposed response was that the jury was to be guided in its deliberations by the evidence as they remembered it as well as the instructions of law they have been given. The State agreed, and Movant's trial counsel responded, "Under the circumstances, we agree to that."

Another note from the jury read: "If the verdict of life imprisonment was given in the second degree as an [sic] in instruction sheet number seven and if our verdict on count two, armed criminal action [is] life imprisonment, can we stipulate these sentences run concurrently or consecutively?" The court asked if there were any objections to it providing the jury with the same response as with the previous note and trial counsel responded, "No."

On the first count, the jury returned a verdict of guilty of murder in the second degree. For Count II, the jury found Movant guilty of armed criminal action. They recommended a sentence of life imprisonment for both counts. At the bottom of the verdict form for Count I, the foreperson wrote the following message: "Whether binding or non binding we the jury unamously [sic] ask of the court that both sentences shall run consecutively." The verdicts were filed on February 20, 1998.

On April 28, 1998, trial counsel filed a motion for new trial and alleged, in part, that the trial court erred by failing to submit Movant's proffered instruction on involuntary manslaughter. On April 30, 1998, Movant was sentenced to life imprisonment on both counts, with the sentences to be served consecutively.

On direct appeal, Movant alleged trial court error for its failure to submit Movant's proffered instruction on involuntary manslaughter. Because the error was unpreserved, we reviewed for plain error and found that no manifest injustice or miscarriage of justice resulted from the trial court's actions in denying the proffered instruction.[1] *Deckard,* 18 S.W.3d at 504.

Movant filed a *pro se* Rule 29.15 motion for post-conviction relief on September 21, 2000. Counsel was appointed, and an amended motion was filed on January 22, 2001. Following an evidentiary hearing, the motion court denied the motion and filed its findings of fact and conclusions of law on January 24, 2002.

In Movant's first point, he asserts that he was prejudiced because trial counsel filed an untimely motion for new trial that included an allegation of error based on the trial court's refusal to instruct the jury on the lesser-included offense of involuntary manslaughter. According to Movant, the prejudice occurred because, on direct appeal, this Court was restricted to plain error review and had the error been preserved by trial counsel, there was a reasonable probability that this Court would have reversed Movant's conviction and remanded for a new trial.

Movant draws our attention to the motion court's findings of fact and conclusions of law on this point in which the court referred to our plain error review of the point on direct appeal and our finding that there was no manifest injustice or miscarriage of justice resulting from the trial court's refusal to submit the instruction for involuntary manslaughter. The motion court also stated the following:

Missouri courts have held that "matters raised and considered under the plain error standard on direct appeal cannot be relitigated under the guise of ineffective assistance of counsel in a post-conviction proceeding." *State v. Clark,* 913 S.W.2d 399, 406 (Mo.App. W.D.1996). In addition, "a finding that no plain error occurred with regard to a claim raised on direct appeal establishes a finding of no prejudice under the *Strickland* test." *Id.*

In the instant case, because the appellate court determined that there was no plain error, there was no prejudice. Since movant has not established prejudice as set out in *Strickland,* movant has failed to meet the burden of proof on this point.

■ Movant is correct that the language from *Clark* and other cases that suggested a finding of no plain error equated to a finding of no prejudice under the *Strickland* test has been overruled. *Deck v. State,* 68 S.W.3d 418, 427 (Mo.banc 2002). According to the Missouri Supreme Court, these cases incorrectly concluded that a finding under direct plain error review of no manifest injustice or miscarriage or justice established a finding of no prejudice under *Strickland. Deck,* 68 S.W.3d at 427. However, we will affirm the motion court's judgment as long as it reached the correct result, even if it may have used incorrect reasoning. *McDonald v. State,* 77 S.W.3d 722, 726 (Mo.App.2002).

---

1. Under Rule 29.11(b), a motion for new trial "shall be filed within fifteen days after the return of the verdict."

■ Involuntary manslaughter is a lesser-included offense of both first degree murder, the offense with which Movant was charged, and second degree murder, the offense with which Movant was convicted. *State v. Brummall*, 51 S.W.3d 113, 116–17 (Mo.App.2001). A trial court is not obligated to give a lesser-included-offense instruction unless the evidence supports acquittal of the defendant on the greater offense and conviction on the lesser offense. *Id.* at 116.

"A person commits the crime of murder in the second degree if he ... [k]nowingly causes the death of another person...." § 565.021.1(1), RSMo 1994. "A person commits the crime of involuntary manslaughter in the first degree if he ... [r]ecklessly causes the death of another person...." § 565.024.1(1), RSMo 1994.

■ In our plain error review of this point on direct appeal, we found that even though Movant testified that he did not intend to kill Hisey, that he did not think the gun was loaded, his conduct went beyond recklessness. *Deckard*, 18 S.W.3d at 503. We determined "that no rational factfinder could conclude ... [Movant] did not act knowingly." *Id.* at 504.

Under the circumstances of this case, Movant has failed to show that there is a reasonable probability that absent trial counsel's alleged error, the result of the trial would have been different. *Stepter*, 794 S.W.2d at 656. Further, he has failed to meet his burden of showing that he was prejudiced by any such alleged error. *Sanders*, 738 S.W.2d at 857. Point I is denied.

■ In his second point, Movant alleges that the ineffective assistance of counsel arose from trial counsel's failure to request that the trial court provide further instructions to the jury following its question about parole eligibility for murder in the second degree.

Movant argues that the jury's notes sent during deliberation and handwritten addition to the verdict form indicated that they were concerned about whether and when Movant might be paroled, which caused the jury to recommend the highest possible sentence, life imprisonment, on the second degree murder verdict. According to Movant, trial counsel should have requested that the jury receive the information that, under Missouri law, a person convicted of second degree murder would be required to serve eighty-five percent of the sentence before becoming eligible for parole.

At the evidentiary hearing, trial counsel testified that he should have included mention of the requirement under §§ 558.019 and 556.061, RSMo 1994, that a person convicted of second degree murder has to serve eighty-five percent of any sentence received. Trial counsel also indicated that information on parole was provided to the jury with respect to the first degree murder instruction (i.e., that the only possible sentence was life without eligibility for probation or parole). Movant reasons that, therefore, such information on parole eligibility should have been provided to the jury with respect to the second degree murder instruction.

Issues such as parole, probation, suspended sentences, or any other form of judicial clemency are considered extraneous to the jury's determination of guilt and punishment. *State v. Massey*, 60 S.W.3d 625, 628 (Mo.App.2001). The matters are "of no concern" to the jury. *State v. Olinghouse*, 605 S.W.2d 58, 69 (Mo.banc 1980).

■ Further, when an MAI–CR instruction is applicable under the law and Notes on Use, that instruction must be given as written, to the exclusion of any other prof-

fered instruction. *State v. Isa,* 850 S.W.2d 876, 902 (Mo.banc 1993). The instruction for second degree murder given here followed the language in MAI–CR 3d 313.04.

The trial court would not have erred either by refusing to submit a proffered instruction by trial counsel that included reference to parole eligibility or by refusing any request made by trial counsel to inform the jury of such eligibility based on the jury's question. *See Id.; Olinghouse,* 605 S.W.2d at 69.

The motion court concluded that there was no evidence as to whether providing the jury information on parole either as an instruction or in response to the jury's question would have had any effect on Movant's sentence. The motion court also found that Movant failed to meet his burden of showing that prejudice resulted from trial counsel's failure to offer an instruction or request such information be provided to the jury.

The motion court's findings and conclusions in this regard were not clearly erroneous. Movant's second point is denied.

The judgment of the motion court is affirmed.

BARNEY, P.J., and GARRISON, J., concur.