Michael A. TABOR, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. SD 30534.

Missouri Court of Appeals, Southern District, Division One.

June 6, 2011.

Motion for Rehearing and Transfer Denied June 27, 2011.

Application for Transfer Denied Aug. 30, 2011.

---

Jeannie Willibey, Assistant Appellate Defender, Kansas City, MO, for Appellant.

Chris Koster, Attorney General, and Richard A. Starnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Judge.

Michael A. Tabor ("Movant") appeals the denial of his Rule 29.15 postconviction motion alleging ineffective assistance of counsel.[1] Movant contends that counsel was ineffective, first, for opening the door for—and failing to object to—evidence of uncharged acts and, second, for failing to submit a lesser-included-offense instruction to the jury. Finding no merit in Movant's claims, we affirm.

### Factual and Procedural Background

On the afternoon of February 24, 2004, Movant and Robert Swick spent several hours trying to catch a nine-month-old colt in an effort to halter break it. The colt

---

1. All rule references are to Missouri Court Rules (2010).

was not accustomed to being handled and was "just running everywhere." Swick eventually left, telling Movant that he would return the next day to continue trying to catch the colt.

Upon Swick's departure, Movant drove to a house where Mark "Matt" Thomas, Charles Anderson, and a few other high school students were "hang[ing] out." Movant asked the boys for help "getting his horses up" from a larger pasture to a smaller one. Although Thomas and Anderson did not know Movant, they and two others agreed to help Movant because they had experience with horses. They got into Movant's vehicle, a minivan he had borrowed from Judith Milholland, his neighbor and landlord.

Movant drove the group to a farm located off Highway N. They moved several horses into a smaller adjoining area, closer to the smaller pasture. The nine-month-old colt was in this group and was skittish and obviously frightened of humans. When darkness fell, two of the students left, but Thomas and Anderson stayed.

As Thomas and Anderson worked to move the horses into the smaller pasture, Movant decided that he wanted to renew his attempts to halter break the unruly colt. Thomas and Anderson got hold of the colt and dressed it with a halter, which had a lead rope approximately six to eight feet long attached to it. After about twenty to twenty-five minutes, Thomas was able to get the colt to follow him. Movant then approached Thomas and tried to lead the colt, but the colt would not lead. Movant told Thomas that he would " 'teach the fucker' to lead." Insisting that he knew a better way to lead the colt, Movant then tied the lead rope to the spare-tire compartment on the rear of the minivan. There was a five- to six-feet distance between the colt and the van.

Movant drove the minivan—with Thomas in the front passenger seat and Anderson in the rear passenger seat—onto Highway N, which is a paved highway. Although Movant initially drove slowly, he quickly sped up, saying to Thomas, "Thirty miles per hour. Sure is fast. Do you think he can do thirty-five?" Thomas saw the speedometer reach thirty-five miles per hour. After reaching that speed, Movant slowed down to between ten and twenty miles per hour. The colt's head was pulled down toward the ground where the lead rope attached to the van, and the colt was consistently pulling back against the van. Movant pulled into a driveway, turned the van around, and then turned off of Highway N onto a gravel road. While Movant was turning the van, the colt stumbled through a ditch.

Once on the gravel road, Movant stopped the van and got out to check on the colt. The colt's heartbeat was "very fast," and it was breathing heavily and soaked in sweat. After a few minutes, Movant started driving again, still on the gravel road.

Shortly thereafter, Movant stopped the van a second time, and this time Thomas and Anderson got out to check on the colt. Both were concerned for the colt's safety and wellbeing. The colt was still sweating, lathered, and breathing heavily. Additionally, this time, the colt was "hotfooting"— continually lifting all four hooves—in an effort to relieve pain in its hooves. Movant then continued driving, but stopped a third time when Thomas and Anderson told Movant they thought the lead rope had broken. Once the van was stopped, Thomas and Anderson told Movant that Anderson's grandmother lived nearby and left; they fabricated this story in order to persuade Movant to stop and let them leave.

Movant then returned to Milholland's home, where he said to her, "I think I fucked up," and he showed her the colt.

The colt was "shaking violently" and bloody under its forelegs, on its back quarter, and near its hooves. Movant told Milholland that the colt had gotten caught in a fence and he had pulled it out. Milholland ran inside, got gauze and peroxide, and attempted to administer aid to the colt; when Milholland approached the colt it would stand up, but otherwise it would lie down. Once Milholland cleaned the colt, she moved it into her garage and covered it with blankets. She checked on the colt periodically until about 3:00 a.m.

The following morning, the colt was still shaky and scared, but its bleeding had "pretty much stopped." Although it was lethargic and did not want to move, Milholland moved the colt outside, where she used water to wash any spots on the colt she had missed the previous evening. Milholland then called Swick, who took the colt to his farm. Swick gave the colt pain medication, and the colt eventually dragged itself around the barn to eat, using only its front legs. Swick kept the colt at his farm for about a week.

On March 5, 2004, Missouri Humane Society Cruelty Investigator Brett Huff, along with Laclede County Sheriff's Investigator George Young, went to Swick's home with a search warrant and seized the colt. When they arrived, the colt had an accelerated heart rate; muscle twitching in its back region; and dirty, matted fur. It also was hotfooting and had injuries to its neck, lower jaw, shoulders, knees, feet, and the inside of its legs. Huff and Young transported the colt to Mid–Rivers Equine Center and then made contact with Movant. They read Movant his Miranda[2] rights, after which Movant agreed to talk. Movant stated, "I messed up," explaining that he tied the colt to the van and dragged it with its head low to the ground.

Tim Ellis, a veterinarian at Mid–Rivers Equine Center, examined the colt when it was brought in. The colt had multiple injuries, including old wounds around its left eye and right elbow, but the most "devastating" wounds were on the colt's hind feet. The colt's hind hooves and bone were worn away all the way into the joint, indicating that the colt had objected to being dragged behind the van and had braced its legs to resist.

Ellis attempted to save the colt by cleaning the wounds and administering antibiotics and painkillers. He then tried to surgically remove all of the infected tissue from the hooves. However, the severity of the infection and the colt's uncontrollable pain led to the animal being euthanized.

Movant was charged as a prior offender with the class D felony of animal abuse, pursuant to section 578.012.[3] He was found guilty following a jury trial and subsequently sentenced as a prior offender to seven years' imprisonment. His conviction and sentence were affirmed by this Court in State v. Tabor, 197 S.W.3d 247 (Mo.App. 2006).

On October 26, 2006, Movant timely filed his pro se "Motion to Vacate, Set Aside, or Correct Judgment and Sentence," in which he alleged sixteen claims of ineffective assistance of counsel. Counsel was appointed for Movant on February 9, 2007, and counsel was granted additional time until May 10, 2007, to file an amended motion. On April 23, 2007, Movant filed a pro se "Statement in Lieu of Filing an Amended Motion and Request for Evidentiary Hearing," in which Movant noted that he had discussed it with appointed counsel and wanted to proceed on his pro se motion. This statement, however, was not signed by appointed counsel as required by Rule

---

**2.** Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** All statutory references are to RSMo Supp. 2001, unless otherwise indicated.

29.15(e). On April 21, 2008, the motion court entered an order denying Movant's motion without an evidentiary hearing. This Court subsequently reversed and remanded for a hearing on the issue of whether Movant had been abandoned by post-conviction counsel. *Tabor v. State*, 282 S.W.3d 381 (Mo.App.2009).

Following the motion court's finding that Movant's original post-conviction counsel had abandoned him, Movant's new appointed counsel filed an amended motion and a motion to file the amended motion out of time. The motion court accepted the amended motion out of time and conducted an evidentiary hearing on February 16, 2010.

In his amended motion, Movant claimed, *inter alia*, that trial counsel erred in two respects: first, that trial counsel erred in "opening the door" to evidence that Movant abused other horses and in subsequently not objecting when the State elaborated on that alleged abuse; and second, that trial counsel erred in not submitting a jury instruction on the lesser-included offense of misdemeanor animal abuse.

At trial, Movant's trial counsel asked Milholland on cross-examination if she had ever seen Movant "beat" any of his horses, to which she replied that she had. Trial counsel then clarified, saying, "Now, beat is a hard word. Not strike, but beat?" Milholland then recanted, saying that she had not seen Movant beat any of his horses. The State, on re-direct, then asked Milholland if she had ever seen Movant "mistreat" a horse, and Milholland replied in the affirmative. Milholland testified that she had seen Movant both smack and kick at the "private parts" of a horse named Whisky on occasions when the horse "exposed" its genitals, saying, "Put it away" or "Knock it off." Milholland stated on re-cross-examination that she did not call the Humane Society or police about Movant's behavior and that she had

only told Movant that he should not do those things.

Trial counsel similarly asked Swick on re-cross-examination if Swick had ever seen Movant do anything "truly abusive" to Whisky. Swick answered, "I think [Movant] will recall me probably saying on one or two occasions that the horse really had to love him or he'd kill his ass." On re-direct, the State asked Swick to expound upon that answer, and Swick testified that Movant rode Whisky "pretty hard and in sort of bad weather sometimes." Swick further testified that Movant did not have a stable for Whisky and that Whisky "spent a lot of time in the woods tied up to a tree where [Movant] resided." The State then asked about Whisky's penis, and Swick stated that Whisky had injured its penis, causing it to become engorged with blood. Swick saw Movant use a pocketknife to "perforate" Whisky's penis in a supposed effort to relieve pressure on the horse's penis, which Movant claimed to have seen a veterinarian do. Later on, Investigator Huff from the Humane Society of Missouri testified, in response to a question from the State, that there were actually three horses he was concerned with as part of the investigation, one of which was the nine-month-old colt. Trial counsel did not object to any of these questions by the State on the ground that they constituted references to uncharged criminal acts.

In his amended motion, Movant contended that trial counsel was aware, based on reports made by the Human Society and provided during discovery, that Movant was suspected of mistreating at least one other horse and, thus, it was unreasonable for trial counsel to have asked any witness about Movant's treatment of other horses. He also argued that trial counsel should have objected to all such questions by the State because the evidence was inadmissi-

ble evidence of other crimes. Movant further argued that he was prejudiced by trial counsel's actions because the evidence would not have been admitted but for trial counsel opening the door.

Trial counsel testified by deposition at the evidentiary hearing on Movant's motion that he had not intended to bring out evidence of Movant's alleged mistreatment of Whisky. He further testified that Movant had told trial counsel that Movant had never abused any other animal and had taken good care of his horses. Therefore, trial counsel asked Milholland and Swick about Movant's treatment of his horses because he did not anticipate an incriminating answer. Trial counsel further stated that, as a horse owner himself, he did not find anything said by Swick to indicate abuse. Trial counsel stated that he should have objected to Huff's testimony.

Trial counsel further testified that he had considered submitting the lesser-included-offense instruction and that he had discussed the matter with both Movant and co-counsel. According to trial counsel, all three agreed that the instruction should not be submitted because trial counsel believed the State had not proved its case; thus, they "went with the felony alone in anticipation of an acquittal." Trial counsel believed the State "could have made a misdemeanor without any problem" and that trial counsel "wasn't going to assist in making [the State's] own case."

The motion court denied Movant's motion, finding, *inter alia,* that regardless of the propriety of trial counsel's actions or lack thereof, Movant had not shown prejudice as a result because the remaining evidence of Movant's guilt was overwhelming. The motion court further found that Swick's testimony failed to constitute evidence of abuse. Finally, the motion court found that, although submission of a lesser-included-offense instruction might have been proper, trial counsel's failure to do so

was reasonable trial strategy. This appeal followed.

### Standard of Review

This Court's review of the denial of a Rule 29.15 motion for post-conviction relief is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Williams v. State,* 168 S.W.3d 433, 439 (Mo. banc 2005). Such "[f]indings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake was made." *Morrow v. State,* 21 S.W.3d 819, 822 (Mo. banc 2000). It is incumbent upon the movant in a postconviction motion to prove his or her claims for relief by a preponderance of the evidence, Rule 29.15(i), and this Court presumes that the motion court's findings and conclusions are correct. *Wilson v. State,* 813 S.W.2d 833, 835 (Mo. banc 1991). We will defer to the motion court's determinations of credibility, and the motion court is free to believe all, part, or none of the witnesses' testimony. *Zink v. State,* 278 S.W.3d 170, 192 (Mo. banc 2009). Finally, we will affirm the motion court's judgment so long as the motion court arrived at the correct result, regardless of how it got there. *Deckard v. State,* 110 S.W.3d 891, 894 (Mo.App.2003).

### Discussion

In order to prevail on a post-conviction motion alleging ineffective assistance of counsel, a movant must overcome a strong presumption of competence and demonstrate, by a preponderance of the evidence, that (1) counsel did not exercise the customary skill and diligence that a reasonably competent attorney would have exercised under the same or similar circumstances, and (2) counsel's failure to exercise such skill and diligence prejudiced the movant in some way. *Strickland v.*

*Washington,* 466 U.S. 668, 687, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). To satisfy the performance prong, a movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *State v. Simmons,* 955 S.W.2d 729, 746 (Mo. banc 1997). In order to demonstrate the requisite prejudice, a movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. *Strickland* defines "a reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Id.* In reviewing such claims, we are not required to examine both prongs; if a movant fails to satisfy the performance prong, we need not consider the prejudice prong, and vice versa. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052; *Sanders,* 738 S.W.2d at 857.

Movant presents two points for our review. We address them in the order presented.

### Trial Counsel's Questions were Part of a Reasonable Trial Strategy

■ In his first point relied on, Movant contends that trial counsel was constitutionally ineffective for, first, questioning Milholland and Swick about Movant's treatment of other horses and, second, failing to object to the State's follow-up questions to those two and Huff regarding Movant's treatment of other horses. We disagree.

■ Movant's trial counsel testified that he did not intend to elicit evidence that Movant mistreated other horses; rather, in reliance upon Movant's own assurance to counsel that "he'd never had any animal abuse issues ... [and] always took care of his horses well[,]" Movant asked Milholland and Swick if they had ever witnessed Movant mistreat any horses in order to proffer evidence that Movant did not abuse his animals. Trial counsel can rely on a defendant's statements in investigating a case and developing trial strategy. *See Gleason v. State,* 329 S.W.3d 714, 718 (Mo. App.2010); *Cochrell v. State,* 537 S.W.2d 584, 585 (Mo.App.1976). Movant told trial counsel that he had never abused any animals, rendering counsel's questions made in reliance upon that statement reasonable trial strategy.[4] Movant cites no authority that required Movant's trial counsel to discount his own client's statements to him about how he treated his animals in favor of the suspicions of abuse based upon double hearsay contained in a third party's report provided during discovery. If the suspicions in the report were correct, then any adverse trial consequences were the result of Movant's misleading statements to trial counsel and were not due to the ineffectiveness of trial counsel.

■ Movant also takes issue with trial counsel's failure to object to the State's questions to Milholland, Swick, and Huff regarding Movant's treatment of other animals. Trial counsel admitted, however, that he had opened the door to such questions with his cross-examination of both Milholland and Swick. Once trial counsel asked Milholland and Swick if either had

**4.** Movant repeatedly references trial counsel's alleged violation of "the well-known rule of cross-examination: 'Do not ask a question that you do not know the answer to.'" While this statement may be a common adage among some trial attorneys, Movant cites no authority—outside of Harper Lee's *To Kill a Mockingbird*—making it an actual rule by which attorneys must abide. As we are aware of no such rule, we cannot find trial counsel ineffective on the basis of not knowing the answers to his cross-examination questions.

seen Movant mistreat his horses, this topic became a proper one for re-direct questioning, and any objections trial counsel might have made would have been overruled. *See Middleton v. State*, 103 S.W.3d 726, 741 (Mo. banc 2003). "Counsel is not ineffective for failing to make non-meritorious objections." *See State v. Clemons*, 946 S.W.2d 206, 228 (Mo. banc 1997). Moreover, while Huff's testimony did not directly tie Movant to the abuse of other horses, even if it had, such evidence was merely cumulative to Milholland's and Swick's testimony. The failure to object to cumulative evidence does not amount to ineffective assistance of counsel. *Coday v. State*, 179 S.W.3d 343, 358 (Mo.App.2005). Movant's first point is denied.

### *Failure to Submit Lesser–Included–Offense Jury Instruction was Reasonable Trial Strategy*

■ In his second point, Movant contends that trial counsel was ineffective for failing to submit a lesser-included-offense instruction to the jury regarding misdemeanor animal abuse. Again, we disagree.

■ In order to establish a claim of ineffective assistance of counsel for failure to submit a lesser-included-offense instruction, Movant must demonstrate that "the evidence would have required submission of a lesser[-]included[-]offense instruction had one been requested, that the decision not to request the instruction was not reasonable trial strategy, and that ... [M]ovant was thereby prejudiced." *Jackson v. State*, 205 S.W.3d 282, 285 (Mo.App.2006). "An objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel." *Id.* (citing *State v. Shurn*, 866 S.W.2d 447, 469 (Mo. banc 1993); *Love v. State*, 670 S.W.2d 499, 502 (Mo. banc 1984)). Moreover, counsel is permitted to adopt an "all-or-nothing" strategy, foregoing an instruction on a lesser-included offense in the hope of an acquittal. *State v. Dexter*, 954 S.W.2d 332, 344 (Mo. banc 1997).

Trial counsel testified that he considered proffering the misdemeanor instruction but, after discussing the matter with Movant and co-counsel, they concluded that the State had not met its burden in proving the felony complaint. Thus, with Movant's agreement, trial counsel "went with the felony alone in anticipation of an acquittal." This amounts to an "all-or-nothing" approach. *See id.* He also testified that the decision was a strategic one and that he did not want "to assist [the State] in making [its] own case." Movant testified at the evidentiary hearing that trial counsel assured Movant he would submit the misdemeanor instruction and that submission of the misdemeanor instruction was a condition of Movant not taking the stand. This testimony, which conflicted with trial counsel's testimony, simply gave rise to a credibility determination, and we are bound to defer to the motion court's credibility determinations. *See Zink*, 278 S.W.3d at 192. As trial counsel's decision was reasonable trial strategy, no further discussion of this point is required. The motion court did not clearly err, and Movant's second point is denied.

### *Decision*

The motion court's denial of Movant's motion for post-conviction relief is affirmed.

BARNEY, P.J., and BURRELL, J., concur.