STATE of Missouri, Plaintiff–Respondent,

v.

**Jerome George POOLE, Defendant–Appellant.**

**No. SD 31403.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 2, 2012.

---

Margaret M. Johnston, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and, Jennifer A. Wideman, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Jerome George Poole ("Defendant") appeals his conviction following a jury trial of distribution of cocaine base, a controlled substance. *See* section 195.211.[1] In a sin-

---

1. The information charged Defendant with a violation of section 195.218 (a distribution of a controlled substance offense that carries an enhanced punishment based on the seller's proximity to public housing), but the case was actually submitted to the jury as a regular

gle point relied on, Defendant claims the trial court abused its discretion in admitting evidence that he refused to provide a court-ordered voice sample to law enforcement. Defendant argues that his refusal to provide the sample "was far more prejudicial than probative of his guilt of the charged offense" because the State could have instead used existing recordings of his voice. Finding no merit in Defendant's contention, we affirm the conviction.

## Applicable Principles of Review

■■■ "The trial court is vested with broad discretion in ruling questions of relevancy of evidence and, absent a clear showing of abuse of that discretion, the appellate court should not interfere with the trial court's ruling." *State v. Brown,* 718 S.W.2d 493, 493–94 (Mo. banc 1986). "A trial court abuses its discretion if the ruling is: (1) clearly against the logic of the circumstances presented to the court, and (2) is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Edberg,* 185 S.W.3d 290, 293 (Mo.App. S.D. 2006). If reasonable persons could disagree as to the trial court's ruling, then the trial court's discretion was not abused. *Id.* "Furthermore, in matters involving the admission of evidence, we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Harrison,* 24 S.W.3d 215, 218 (Mo.App. W.D.2000).

distribution offense. All statutory references are to RSMo Cum.Supp.2011.

2. We have summarized the evidence in accordance with the principle that "[w]e view the evidence and inferences in the light most favorable to the verdict, and disregard all contrary evidence and inferences." *State v. Graham,* 345 S.W.3d 385, 387 (Mo.App. S.D. 2011).

## Facts and Procedural Background[2]

The trial that resulted in Defendant's conviction was his second; a previous trial of the charged offense resulted in a mistrial when the jury was unable to reach a verdict. Between the two trials, the State moved for an order compelling Defendant to provide voice exemplars pursuant to Rule 25.06(B)(2).[3] The exemplar requested by the State was a repetition by Defendant of portions of statements he had made to an undercover officer during the drug transaction in question. Defendant objected at the hearing on the motion, expressing disagreement with existing law holding that voice exemplars are "not testimonial in nature," insisting that restating phrases for an exemplar would constitute a type of "reenactment" similar to that prohibited for photographs, questioning the science behind voice comparisons, suggesting there was no good cause for the order, and implicitly suggesting that the prosecution should instead use an existing sample of Defendant's voice by "just pull[ing] a telephone call"—presumably a reference to recorded calls Defendant may have made while in the county jail.

The trial court ruled that "the State has met its burden under the rule in terms of showing good cause for the voice exemplar to be given, and so [it] will order that that come about." The trial court advised Defendant that if he chose not to provide the exemplars, then the State could be permitted to present evidence to the jury that Defendant had refused to do so. The trial

3. Rule 25.06(B)(2) provides that "[u]pon motion by the state, and subject to constitutional limitations and any other safeguards deemed appropriate by the court, and upon a showing of good cause, the court may order the defendant to: ... [s]peak for identification[.]" All rule references are to Missouri Court Rules (2012).

court warned Defendant that he could also be held in contempt if he refused to comply with its order. Upon advice of counsel, Defendant decided not to provide the ordered voice exemplars.

At a hearing on pretrial motions held outside the presence of the jury, defense counsel argued that Defendant's refusal to provide voice exemplars should be excluded from the trial, again maintaining disagreement with existing law, insisting that the evidence was "more prejudicial than probative" in that it essentially tried to make Defendant reenact the offense, and asserting that the State had two recordings of calls that Defendant had made from the jail's telephone that could be used for comparison purposes. The prosecutor stated, "Using the jail calls will not be sufficient to give an example of [Defendant]'s voice." The trial court denied Defendant's motion *in limine* to exclude Defendant's refusal to provide the ordered exemplars.

### The evidence adduced at trial

On January 10, 2008, Springfield Police detective Eric Hawkins was working in an undercover capacity when he contacted Joyce Galvin at a Springfield apartment complex around 9:30 p.m. for the purpose of purchasing "crack cocaine." Detective Hawkins was accompanied by a confidential informant who had originally introduced him to Ms. Galvin. Ms. Galvin came out of the apartment complex with Defendant, and they both got into the backseat of the detective's Chevy Tahoe. It was dark outside, but lights were providing illumination to the breezeway through which Defendant walked to reach the detective's vehicle. The parking lot also had "some lighting[.]" Detective Hawkins was able to observe Defendant as he got into the detective's vehicle. Detective Hawkins drove his vehicle in a circle on the parking

lot while the transaction was discussed. Detective Hawkins paid $50 to Defendant for the drugs, and he paid $10 to Ms. Galvin for setting up the deal. A recording device captured the conversation inside the vehicle, and the recording was played for the jury. Detective Hawkins identified Defendant as the person who sold him the cocaine base.

After Defendant and Ms. Galvin got out of the vehicle, Detective Hawkins weighed the drugs and realized that what he had received was "really short" of what he expected to get in the transaction, so he called Ms. Galvin and stated, "hey, you need to make this right." Ms. Galvin set up "a three-way conversation through [her] phone[,]" and she referred to Defendant as "Jerome" during the call.

Defendant returned about twenty minutes later and met with Detective Hawkins, the confidential informant, and Ms. Galvin in the apartment breezeway beneath a light that illuminated the area. Detective Hawkins had been able to watch Defendant as he approached this second meeting on foot, and Defendant was about an arm's length away from Detective Hawkins during the meeting. Defendant pulled out a small plastic bag, broke "off a piece from a larger rock[,]" and gave the smaller piece to the detective. Detective Hawkins said, " 'Thanks, Jerome' at the very end of the transaction." This encounter was also recorded and played for the jury.

Later that evening, detective Hawkins called Ms. Galvin again in an attempt to acquire Defendant's last name by making up a story about possibly knowing Defendant from somewhere else. When Ms. Galvin said that Defendant's last name was "Poole," the detective conducted a search for "Jerome Poole" in driver's license records and "immediately" recognized a photograph of "Jerome Poole" as the person

he had met within the previous two hours. Detective Hawkins determined that the two pieces of crack cocaine he had received from Defendant weighed .3 gram. He then photographed the items and packaged them for submission to the crime lab.

A criminalist with the Missouri State Highway Patrol crime lab tested the substance submitted by Detective Hawkins and determined that it weighed .31 gram and contained cocaine base, a schedule II controlled substance.

Springfield Police officer Wes Friebe was called to testify about his attempt to collect a voice exemplar from Defendant. Defense counsel objected, referring to his pretrial arguments, and the trial court overruled the objection. Officer Friebe testified that on July 29, 2010, he met with Defendant's counsel pursuant to the trial court's order and the "State's expert" was available.[4] Defendant was also present, but he remained in a separate room. Defense counsel "advised [Officer Friebe that] they were not going to be providing samples."

Defendant did not testify. His only evidence was a photograph of the money the detective had used to purchase the cocaine base. During closing argument, the State argued, "The last point is [Defendant's] failure to give that voice sample; that equals his consciousness of guilt. He knows that he is on that audio recording. That's why he did not submit to that [c]ourt-ordered voice sample." In rebuttal argument, the State returned to Defendant's refusal to give a voice exemplar. An objection from defense counsel to one portion of that argument was sustained as follows:

[Prosecuting attorney]: I want to end by talking with you, as well, about the voice exemplar. [Defense counsel] has done a lot about saying I've created reasonable doubt by all the stuff that these officers didn't do and the bad job that they did. Well, ladies and gentlemen, you know what; I tried to get you some evidence. I tried to get you [Defendant]'s voice sample to make a comparison.

So we're talking about an innocent person who is completely blameless in all of this and has absolutely nothing to hide? When the [c]ourt orders that person to give a voice sample, the [c]ourt ordered it. We're not talking about the Fifth Amendment right not to testify. This is an accepted sample. In other words, it's like getting fingerprints, it's like getting a hair sample—

[Defense counsel]: Judge, I object. There's absolutely no scientific correlation to this. It's not even science based.

[Trial Court]: Objection is sustained.

[Prosecuting attorney]: It is something—

[Trial Court]: Five minutes, too.

[Prosecuting attorney]: It is something to make a comparison. It's an identifiable characteristic. So if we're dealing with a person who is completely blameless, has nothing to hide, is totally innocent in all of this, what is that person going to do when they're facing a Court order to do it? They're going to gladly provide the voice sample.

4. Officer Friebe had "a set of phrases. [He] was supposed to have them read three times from top to bottom, and then [he] was supposed to have them repeated [by Defendant] after [he] read them." Meanwhile, "the forensic audio expert" would "listen and make his determination." The officer also anticipated that the "expert" would also have phrases for Defendant "to repeat back to him."

So what does that mean when he refuses to give that voice exemplar, to you? It means that he knows that you've got that buy tape. He knows that he's on it, and he knows that when you listen to that tape and have a voice sample of his to compare it to, you're going to know it too. That's why he refused.

So, ladies and gentlemen, I'm not asking you to take one piece of evidence and say that that's what this case is based on. I'm asking you to look at all of the evidence in this case; Detective Hawkins' identification, Joyce Galvin's statement—whether she's a crackhead or not, she still gave out the last name Jerome Poole, and he lives down the road from her—as well as his refusal to submit to that voice exemplar.

After deliberating, the jury found Defendant guilty of distributing a controlled substance. The trial court subsequently denied Defendant's motion for new trial—which included his claim that the trial court erred by admitting evidence of Defendant's refusal to provide voice exemplars—and sentenced Defendant to eight years' imprisonment. This appeal timely followed.

## Analysis

Defendant's point claims the trial court abused its discretion in "admitting evidence of his refusal to give a voice sample by speaking the same words the drug seller spoke on the recording of the drug sale" because the State had other recordings of Defendant's voice from his jail telephone calls and evidence of the "refusal was far more prejudicial than probative of his guilt to [sic] the charged offense." We disagree.

■ Defendant argues that the State did not offer "telephone calls he made from the jail" for the jury's consideration without citation to any authority suggesting that the trial court abused its discretion by not requiring the State to use such an alternative. "An appellant must support his arguments with relevant authority or explain why such authority is not available." *Johnson v. State*, 103 S.W.3d 182, 187 (Mo.App. W.D.2003). We further note that the Western District has held that a trial court did not err in requiring a defendant, in the courtroom and in front of the jury, "to utter the words used by the perpetrator, for it allowed the jury to determine itself if the defendant had a distinctive voice, as testified by [name of a witness]. Further, it allowed [the witness] to make an in-court identification of the voice." *State v. Mitchell*, 755 S.W.2d 603, 609 (Mo.App.E.D.1988).

■■ Defendant also argues that his refusal to comply with the court order "had little tendency to prove a matter in issue." As the State asserts, Defendant's refusal to give a voice exemplar when ordered to do so is relevant to his consciousness of guilt. That other recordings of his voice may have existed does not change the probative value of his refusal to provide an exemplar as ordered by the court. In general, "[a] permissible inference of guilt may be drawn from acts or conduct of an accused subsequent to an offense if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or accused's role therein." *State v. Lockett*, 639 S.W.2d 132, 136 (Mo.App. W.D. 1982) (holding that the defendant's changing of his physical appearance after an offense suggested a consciousness of guilt). Even being arrested for failing to appear for court may be admissible in some circumstances as evidencing consciousness of guilt. *See State v. Bowles*, 23 S.W.3d 775, 781–82 (Mo.App. W.D.2000); *State v.*

*Chapman,* 876 S.W.2d 15, 18 (Mo.App. E.D.1994).

■ As to the legal relevance of the evidence, the trial court had to determine that its probative value outweighed any unfair prejudice it might produce. "Legal relevance weighs the probative value of the evidence against its costs—*unfair* prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *State v. Anderson,* 76 S.W.3d 275, 276 (Mo. banc 2002) (emphasis added). *See also State v. Diercks,* 674 S.W.2d 72, 78–79 (Mo.App. W.D.1984) (upholding the trial court's decision to admit a bag of dried marijuana seized from the defendant's home into evidence when the defendant claimed that he thought his marijuana plants were okra or marigolds).

■ Although the highly probative evidence of his refusal to provide a voice exemplar was also highly detrimental to Defendant's prospects of being acquitted, that prejudice was not unfair. Defendant, after being fully informed of the potential consequences, chose to refuse to comply with the trial court's order, presumably determining that the negative inference flowing from that refusal would be less harmful to his defense than allowing the jury to hear the ordered sample of his voice.

Because the contested evidence was both logically and legally relevant, the trial court did not abuse its discretion in admitting it. The point is denied, and the judgment of conviction is affirmed.

NANCY STEFFEN RAHMEYER and GARY W. LYNCH, JJ., concur.