STATE of Missouri, Plaintiff–Respondent,

v.

Jonathon T. ERVIN, Defendant–Appellant.

No. SD 31950.

Missouri Court of Appeals,
Southern District,
Division Two.

May 2, 2013.

Craig A. Johnston of Columbia, MO, for Appellant.

Chris Koster, Atty. Gen., Daniel N. McPherson, Asst. Atty. Gen. of Jefferson City, MO Division II, for Respondent.

JEFFREY W. BATES, J.

Jonathon Ervin (Defendant) was convicted of one count of statutory sodomy in the first degree. *See* § 566.062.[1] On appeal, Defendant argues that the trial court erred in admitting a portion of Defendant's videotaped interrogation. We affirm the trial court's judgment.

Defendant does not challenge the sufficiency of the evidence to sustain his conviction. We view the evidence in the light most favorable to the verdict. *State v. Dillard*, 158 S.W.3d 291, 294 (Mo.App. 2005). So viewed, the following evidence was adduced at trial.

On June 4, 2010, Defendant was living at his grandfather Lawrence's home. Defendant's step-brothers, Terry and Joshua (Victim), were dropped off by their mother so Lawrence and Defendant could watch the two boys while she was at school.[2] Terry was approximately five years old, and Victim was twenty-one months old.

Lawrence and Terry went out to a shed behind the house to do some work, leaving Defendant and Victim alone in the house. When Terry came back inside, Victim and Defendant were alone in the kitchen. Victim was not wearing a diaper and had blood running down his leg. Defendant was not wearing a shirt and warned Terry not to tell anyone about what he saw.

Victim's mother called to check in before she came to pick up Victim and Terry. When Terry answered the phone, she could hear Victim screaming in the background. She asked to speak to Defendant, and he told her Victim was being fussy. When she arrived, Victim grabbed his diaper bag and "acted like he wanted just to get out of there." Victim's mother had changed Victim's diaper right before she dropped him off at Lawrence's home and had not noticed anything unusual. She asked Defendant how Victim had behaved. Defendant said that Victim had "pooped all over him[.]"

Victim was still being fussy as they were leaving Lawrence's house, and his mother had to "push him down" to get him buckled into his car seat. When they arrived at her house, she noticed blood on Victim's foot. Victim's father left Victim's mother a voicemail that Defendant had called to tell him that Victim had a bump on his bottom that they might want to have checked out. When Victim's mother checked Victim's diaper, Victim "had stuff dangling from his bottom. It looked like he had been ripped from the inside out and he had blood all over the diaper[.]" She took Victim to the emergency room, and Victim was transferred to Cardinal Glennon Children's Hospital in St. Louis for treatment.

Victim had bruising and swelling—signs of a traumatic injury—around his rectal area. An endoscopy revealed mucosal fissures in the lining of Victim's anus. Dr. Timothy Kutz, a specialist in child abuse and maltreatment, examined Victim at Cardinal Glennon. Dr. Kutz concluded that Victim's "extensive" injuries "were

---

1. All statutory references are to RSMo Cum. Supp. (2009).

2. Defendant, Terry, and Victim share the same father. Terry and Victim share the same mother. Lawrence is their father's father. Because the parties involved are related, we refer to them by their first names for clarity. No disrespect is intended.

consistent with or indicative of penetrating anal trauma."

Defendant was interviewed by Detective Brandin Caid (Detective Caid), an investigator with the sheriff's department. After Defendant was read his *Miranda* rights, Detective Caid questioned Defendant about his interaction with Victim at Lawrence's house that day.[3] Detective Caid explained Victim's injuries to Defendant, and he initially answered Detective Caid's questions. Defendant did not respond when asked if he knew how Victim had been injured. Detective Caid repeated, "Do you have any idea at all?" Defendant then responded, "That's what this whole thing is about?" Detective Caid again explained that they were trying to figure out how Victim was injured. After a pause, Defendant said that he did not want to talk anymore. The interview ended.

Defendant was charged by information with one count of first degree sodomy. *See* § 566.062.[4] A jury found Defendant guilty, and the trial court imposed a 30-year sentence. This appeal followed.

▮▮▮ A trial court has broad discretion to admit evidence, and reversal is warranted only when that broad discretion is clearly abused. *State v. Jackson,* 248 S.W.3d 117, 125–26 (Mo.App.2008). "A decision to admit evidence constitutes an abuse of discretion when the decision is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration." *State v. Smith,* 330 S.W.3d 548, 553 (Mo.App.2010). "If reasonable persons could disagree as to the trial court's ruling, then the trial court's discretion was not abused." *State v. Poole,* 389 S.W.3d

678, 680 (Mo.App.2012). "In matters involving the admission of evidence, we review for prejudice, not just error, and we will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Cummings,* 134 S.W.3d 94, 103 (Mo.App.2004).

In Defendant's sole point, he contends the trial court erred in admitting the end of Defendant's videotaped interview. Defendant argues that the admission of his silence in response to a question and his decision to terminate the interview "was an impermissible comment on [Defendant's] invocation of his right to remain silent since it revealed that [Defendant] remained silent under circumstances calling imperatively for an admission or denial." According to Defendant, this violated his Fifth Amendment privilege against self-incrimination and his Fourteenth Amendment due process rights. We disagree.

▮▮▮ The Fifth Amendment privilege against self-incrimination requires that, prior to interrogation, a suspect in custody be informed "in clear and unequivocal terms that he has the right to remain silent." *Miranda v. Arizona,* 384 U.S. 436, 467–68, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege[.]" *Id.* at 473–74, 86 S.Ct. 1602. Consistent with those guarantees of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment, *post-Miranda* silence may not be used for impeachment purposes. *Doyle v. Ohio,* 426 U.S. 610,

---

3. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Defendant was 16 years old at the time the crime was committed, but he was charged and tried as an adult.

617–19, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

> [W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Id.* at 618, 96 S.Ct. 2240. "Relying on the *Doyle* notion of fundamental unfairness, Missouri cases have held that *post-Miranda* silence cannot be used as evidence to incriminate the defendant." *State v. Dexter,* 954 S.W.2d 332, 338 (Mo. banc 1997).[5] It is this line of cases, referenced by our Supreme Court in *Dexter,* on which Defendant relies. The video showed Defendant's silence in the face of Detective Caid's question regarding Victim's injuries and Defendant's subsequent invocation of his right to remain silent.

■■■■ Defendant's silence in response to Detective Caid's question was properly admitted because it occurred after Defendant began answering questions and waived his right against self-incrimination:

> [T]he rule against admissibility of an accused's post-arrest silence does not apply if he chooses to waive his Fifth Amendment right against self-incrimination by making statements while in custody. Once an accused agrees to answer questions, his failure to answer certain inquiries is a fair subject for comment at trial.

*State v. Pulis,* 822 S.W.2d 541, 546 (Mo. App.1992) (internal citations omitted); *see State v. Bragg,* 867 S.W.2d 284, 292 (Mo.

App.1993). Waiver of the privilege against self-incrimination is effective until withdrawn. *State v. Smart,* 756 S.W.2d 578, 581 (Mo.App.1988). Reassertion of the privilege functions to terminate the interrogation, but "is not available to avoid a single offensive question[.]" *Id.* Here, Defendant did not assert his intention to stop answering questions until *after* Detective Caid posed the question regarding Victim's injuries. Evidence that Defendant remained silent in the face of that question was properly admitted.

■■■■ Defendant also challenges the admission of the portion of the video showing Defendant's invocation of his right to remain silent and the termination of the interrogation. Defendant is correct that such evidence cannot be used to incriminate a defendant. *Dexter,* 954 S.W.2d at 338. Such evidence, however, is not necessarily improper. As the western district of this Court explained in *State v. Frazier,* 927 S.W.2d 378 (Mo.App.1996):

> Once the defendant revokes the waiver of his right to remain silent, the state can show the circumstances under which an interrogation was terminated. Nonetheless, any evidence describing the conclusion of an interrogation must be carefully scrutinized. Evidence in regard to the conclusion of an interrogation which reveals that the defendant was failing to answer a direct charge of guilt is improper. Likewise, evidence which reflects that the defendant "clammed up" under circumstances calling imperatively for an admission or denial should not be admitted. However, to the extent that no inference of guilt can reasonably be drawn from evidence describing the con-

---

**5.** "With respect to *post-Miranda* warnings 'silence,' we point out that silence does not mean only muteness; *it includes the statement of a desire to remain silent, as well as of* a desire to remain silent until an attorney has been consulted." *Wainwright v. Greenfield,* 474 U.S. 284, 295 n. 13, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986).

clusion of an interrogation, it is admissible.

*Id.* at 380 (internal citations omitted). Here, Defendant ended the interview after discussing his relationship with Victim, his interaction with Victim earlier that day at Lawrence's house and his understanding of Victim's injuries. This is not a case where the defendant refused to answer a direct charge of guilt or "clammed up" under circumstances calling for an admission or denial. *See State v. Tims,* 865 S.W.2d 881, 886 (Mo.App.1993). Such evidence is only improper "where a jury could conclude that only a guilty person would have remained silent." *Id.* at 885. Defendant did not refuse to answer a direct charge of guilt—Detective Caid merely asked Defendant if he knew anything about how Victim had sustained the injuries, as Defendant had interacted with Victim earlier in the day at Lawrence's home.

This also is not a case in which Detective Caid's examination somehow emphasized Defendant's invocation of his Fifth Amendment privilege, so as to create an impermissible inference of guilt arising from the exercise of that constitutional right. *See State v. Whitmore,* 948 S.W.2d 643, 647 (Mo.App.1997). We note that "[a]ny evidence *describing* these events must be carefully scrutinized." *Tims,* 865 S.W.2d at 886 (emphasis added). Here, there was no testimony describing this occurrence. After the video concluded, Detective Caid was asked "Detective, did that conclude your interview of [Defendant]?" to which he replied, "It did." "[M]erely testifying to the conclusion of an interrogation after a defendant waived his right to silence is not prejudicial error." *Id.* (determining officer's testimony affirming the conclusion of the interview was proper). The State

did not draw attention to Defendant's reassertion of his Fifth Amendment privilege during opening statement, during testimony or in closing argument. *See State v. Riley,* 901 S.W.2d 92, 95 (Mo.App.1995) (finding no error where the evidence came "in a casual way, and the prosecutor made no attempt to make anything of it"). Because the mere playing of the video itself did not create an impermissible inference of guilt arising from Defendant's invocation of his right to remain silent, we cannot say the trial court abused its discretion in admitting the video in its entirety.

■■■■ Assuming *arguendo* that a *Doyle* violation occurred, Defendant would not be entitled to relief. "The proper standard of review, when the error is preserved, is the harmless-beyond-a-reasonable-doubt standard." *State v. Brooks,* 304 S.W.3d 130, 137 (Mo. banc 2010). "The burden is on the State to prove that the error complained of did not contribute to the verdict obtained." *State v. Lopez,* 128 S.W.3d 195, 201 (Mo.App.2004).

> To determine the effect of a *Doyle* violation on the jury's verdict, this Court examines these factors: (1) whether the government made repeated *Doyle* violations; (2) whether the trial court made any curative effort; (3) whether the defendant's exculpatory evidence is transparently frivolous; and (4) whether the other evidence of the defendant's guilt is otherwise overwhelming.

*Brooks,* 304 S.W.3d at 137.[6]

With respect to the first factor, Defendant identified only one alleged *Doyle* violation. With respect to the second factor, the trial court gave jurors Instruction No. 4, which included a discussion of the presumption of innocence and Instruction No.

---

**6.** This four-factor analysis applies whether the error is properly preserved or not. *Dexter,* 954 S.W.2d at 340 n. 1.

7, which prohibited drawing an inference of guilt from the fact that Defendant did not testify. We presume the jurors obeyed the court's instructions. *See Boone v. State*, 147 S.W.3d 801, 808 (Mo. App.2004). The third factor is inapplicable because Defendant presented no exculpatory evidence. With respect to the fourth factor, the evidence of Defendant's guilt was overwhelming. Defendant was alone with Victim when he sustained his injuries. Victim's mother had changed Victim's diaper immediately prior to taking Victim to Lawrence's home and had not noticed any injuries. When Terry entered the house after working out in the shed, he saw Victim diaperless with blood running down his leg. Defendant was not wearing a shirt and warned Terry not to tell anyone what he had seen. Victim's blood was found on the carpet near the kitchen. Victim's injuries were indicative of penetrating anal trauma. Even if the admission of the video was improper, any error was harmless beyond a reasonable doubt in light of the overwhelming evidence presented against Defendant. The judgment of the trial court is affirmed.

DON E. BURRELL, C.J., and MARY W. SHEFFIELD, J., concur.