# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1743

_____

Jonathan T. Ervin

*Petitioner - Appellant*

v.

Michael Bowersox, Warden

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: March 15, 2018
Filed: June 13, 2018

_____

Before WOLLMAN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Jonathan T. Ervin was convicted of statutory sodomy and sentenced to 30 years' imprisonment. He appeals the district court's[1] denial of his petition for habeas corpus under 28 U.S.C. § 2254(d), arguing that his Fifth Amendment right against

---

[1]The Honorable E. Richard Webber, United States District Court Judge for the Eastern District of Missouri.

self-incrimination was violated when the state trial court admitted into evidence a video of him invoking his post-Miranda right to silence. We affirm.

## I. Background

In June 2010, Ervin was sixteen and living at the home of his grandfather. On June 4, 2010, Ervin's half-brothers, five-year-old T.L.E. and twenty-month-old J.M.E., were dropped off by their mother so that Ervin and his grandfather could watch the boys while she attended school. Prior to dropping the boys off, their mother had changed J.M.E.'s diaper, but did not notice anything unusual.

Ervin's grandfather and T.L.E. went outside to work, leaving Ervin and J.M.E. alone in the house. T.L.E. came inside and found Ervin and J.M.E. in the kitchen. J.M.E. was not wearing a diaper and had blood running down his leg.

J.M.E. and T.L.E.'s mother called to check on the boys. When T.L.E. answered the phone, she could hear J.M.E. screaming in the background. Ervin also spoke to her and told her that J.M.E. was being fussy. Upon arriving to pick up the boys, she asked how the boys had behaved, and Ervin told her that J.M.E. had "pooped all over him."

After arriving home, J.M.E.'s mother noticed that he had blood on his foot. J.M.E.'s father had also left her a voicemail telling her that he had spoken to Ervin, who had said that J.M.E. had a bump on his bottom that they might want to look at. J.M.E.'s mother checked his diaper and saw that J.M.E. "had stuff dangling from his bottom. It looked like he had been ripped open from the inside out and he had blood all over his diaper."

J.M.E.'s mother took him to the emergency room, after which he was transferred to the children's hospital for treatment. J.M.E. had bruising and swelling around his rectal area. An endoscopy also showed that J.M.E. had mucosal fissures in the lining of his anus. A physician who specializes in child abuse and malnutrition examined J.M.E. and concluded that his "injuries were consistent with or indicative of penetrating anal trauma."

Ervin was interviewed that same day by Detective Brandin Caid, an investigator with the sheriff's department. We recite the facts of the interview as set forth in the Missouri Court of Appeals opinion. Detective Caid read Ervin his Miranda rights, which Ervin voluntarily waived. Caid asked Ervin about his interactions with J.M.E. that day. Caid explained J.M.E.'s injuries to Ervin, and Ervin initially answered Caid's questions. When Caid asked if Ervin knew how J.M.E. was injured, Ervin did not respond. Caid repeated his question, to which Ervin replied, "That's what this whole thing is about?" Detective Caid explained to Ervin that they were trying to figure out how J.M.E. sustained his injuries. Ervin paused and then stated that he did not want to talk anymore. The interview thereafter ended.

Charges were brought against Ervin in Missouri state court. Ervin filed a motion in limine to preclude the playing of the portion of his video interview in which he remained silent and invoked his Miranda rights. The trial court denied the motion. During its opening statement, the state referred to the interview, stating in relevant part:

> Detective Caid is explaining the injury that [J.M.E.] has at this point to [Ervin] during the interview, and he tells him, I want to know how these injuries happened to [J.M.E.]. [Ervin] stops, looks at the detective for several seconds, and says, that's what this is about?

Defense counsel renewed the objection during the state's examination of Caid, but the objection was again overruled. The video was thereafter played for the jury in its

-3-

entirety. After the video ended, the state asked Caid, "Detective, did that conclude your interview of [Ervin]?" to which Caid responded, "It did."

The state again referred to the interview in its closing statement:

> [Ervin's] statement that he made to Detective Brandin Caid. He admits some things in that statement itself. You can listen to that statement again when you go back there if you like. Any of this evidence that you want to take with you, you can take it with you to look at. [Ervin] tells us he was with [J.M.E.] that day, in the house. [T.L.E.] was outside with grandpa. He even admits that [T.L.E.] walks in the second time when he's changing [J.M.E.]. The defendant admits that the second time when he's changing [J.M.E.] that [J.M.E.] poops on him.

Following his conviction, Ervin filed a direct appeal to the Missouri Court of Appeals, arguing that the trial court had violated his Fifth Amendment right to remain silent and his Fourteenth Amendment right to due process in overruling his objection regarding the interview. The court affirmed the conviction, concluding that Ervin's post-Miranda silence was properly admitted because it did not create an impermissible inference of guilt. State v. Ervin, 398 S.W.3d 95, 101 (Mo. Ct. App. 2013) (per curiam). Additionally, the court determined that even if the admission of the video was improper, any error was harmless because of the overwhelming evidence presented against Ervin. Id. at 101-02.

Ervin thereafter filed a petition for writ of habeas corpus in federal district court, which denied relief but granted a certificate of appealability on the question whether the trial court erred in admitting evidence of Ervin's interview with law enforcement.

## II. Discussion

In reviewing a federal district court's denial of habeas relief, we review findings of fact for clear error and conclusions of law *de novo*. Bell v. Attorney Gen. of Iowa, 474 F.3d 558, 560 (8th Cir. 2007).

To succeed on a claim for habeas relief under 28 U.S.C. § 2254(d), an applicant must show that the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish a habeas claim under § 2254(d)(1), the application of Supreme Court holdings must "be 'objectively unreasonable,' not merely wrong." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76 (2011)). "A state court 'unreasonably applies' Supreme Court precedent if it 'identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Worthington v. Roper, 631 F.3d 487, 495 (8th Cir. 2011) (alterations in original) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).

The parties recognize that the clearly established federal law governing this claim derives from the Supreme Court's decision in Doyle v. Ohio, 426 U.S. 610, 619 (1976), which held that the Constitution prohibits the state from using silence to impeach a defendant's testimony at a later trial after he has invoked his post-Miranda right to remain silent. For purposes of analyzing a Doyle violation, we include a

defendant's statement of a desire to remain silent, and therefore "treat a defendant's invocation of his Miranda rights not as a statement, but as post-Miranda warnings silence." Fields v. Leapley, 30 F.3d 986, 990 (8th Cir. 1994) (citing Wainwright v. Greenfield, 474 U.S. 284, 295 n.3 (1986)).

The Doyle rule does not apply, however, to circumstances in which the state inquires into post-Miranda inconsistent statements about why a defendant was silent. Anderson v. Charles, 447 U.S. 404, 408-09 (1980) (per curiam). "Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent." Id. at 408. In these circumstances, the state is not prohibited from cross-examining a defendant who voluntarily waives his right to remain silent so long as the questions asked are not "designed to draw meaning from silence," but instead are used only to elicit an explanation for a prior inconsistent statement. Id. at 409.

In Greer v. Miller, 483 U.S. 756, 765-66 (1987), the Supreme Court reiterated that the crux of a Doyle violation is whether the state was permitted to make specific inquiries or arguments about a defendant's post-Miranda silence as a way to infer guilt. The Supreme Court instructed courts to look at the sequence of events at trial to determine whether such a violation occurred. Id.; see also Brecht v. Abrahamson, 507 U.S. 619, 629 (1993) (stating that a Doyle violation is considered a trial error, and the court must analyze the events at trial to determine if a violation occurred).[2]

---

[2]The state also cites Salinas v. Texas, 570 U.S. 178, 189-90 (2013), which states that the prosecution may admit a defendant's silence in its case in chief if a defendant does not expressly invoke his right to remain silent. Salinas involves a pre-Miranda, noncustodial interview, however, and is thus not directly applicable to the facts before us. Moreover, Salinas does not bear on our analysis of clearly established law because it postdated the Missouri Court of Appeals's decision in this case. See Greene v. Fisher, 565 U.S. 34, 38 (2011) (stating that for habeas purposes, the time period for assessing whether a law is clearly established is at the time in

Ervin contends the Missouri Court of Appeals unreasonably applied clearly established federal law when it held that the admission of, and the state's reference to the entirety of the interview did not constitute a <u>Doyle</u> violation. On collateral review of an alleged <u>Doyle</u> violation, we analyze whether the error had a "substantial and injurious effect" on the verdict. <u>See</u> <u>Brecht</u>, 507 U.S. at 637-38; <u>see also</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 121-22 (2007) ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in <u>Brecht</u>, . . . whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard . . . .").

The question before the Missouri Court of Appeals on direct appeal was whether the playing of the interview and the references thereto were designed to draw meaning from silence. The court summarized its response to Ervin's claim, stating:

> The State did not draw attention to Defendant's reassertion of his Fifth Amendment privilege during opening statement, during testimony or in closing argument. . . . [and] the mere playing of the video itself did not create an impermissible inference of guilt arising from Defendant's invocation of his right to remain silent.

<u>Ervin</u>, 398 S.W.3d at 101. In light of the fact that the United States Supreme Court has not decided whether a defendant's assertion of his previously waived <u>Miranda</u>

_____

which the state court renders its judgment). Nonetheless, <u>Salinas</u> indicates that this is an area of law that remains somewhat unsettled, thus undercutting Ervin's claim that the Missouri Court of Appeals unreasonably applied clearly established law. <u>See</u> <u>Hensley v. Roden</u>, 755 F.3d 724, 734 (1st Cir. 2014) (noting that later law "can help us gauge how unsettled the law was at the time the operative state court decision was issued"); <u>Rodriguez v. Chandler</u>, 492 F.3d 863, 865 (7th Cir. 2007) (concluding that when the law is unsettled, it "normally means that there cannot be federal collateral relief").

rights may be used against him, the Missouri Court of Appeals's decision that no Doyle violation occurred did not constitute an unreasonable application of clearly established federal law. The district court thus did not err in denying Ervin habeas relief on this ground.

Ervin argues in the alternative that he should be granted habeas relief because the adjudication of his claim involved an unreasonable determination of the facts. Under § 2254(d)(2), "habeas relief can be available if the conviction at issue is based on findings of fact that could not reasonably be derived from the state court evidentiary record." Barnes v. Hammer, 765 F.3d 810, 814 (8th Cir. 2014). We presume that the state court's findings are correct, however, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Moreover, "[t]he existence of some contrary evidence in the record does not suffice to show that the state court's factual determination was unreasonable." Cole v. Roper, 783 F.3d 707, 711 (8th Cir. 2015).

The Missouri Court of Appeals concluded that even assuming a Doyle violation, the error was harmless because the overwhelming evidence supported Ervin's conviction. Ervin, 398 S.W.3d at 102. In addition to recounting the evidence set forth above, the court noted that Ervin was not wearing a shirt when T.L.E. entered the house and told T.L.E. not to tell anyone what he had seen; that law enforcement discovered J.M.E.'s blood on the kitchen carpet of Ervin's home; and that J.M.E.'s injuries are consistent with penetrating anal trauma. Id.

Ervin disputes the court's characterization of the evidence of his guilt as overwhelming. He argues that the court ignored the fact that he had not confessed, that there were no eyewitnesses to the offense, that no evidence of any penetrating object was ever presented, that no blood or semen was detected in his underwear, that T.L.E. said that he poked J.M.E. with a pointer, that there were some inconsistencies

in T.L.E.'s statements, and that T.L.E. never told anyone that he saw Ervin harm J.M.E.

Whatever the force of Ervin's recital of the evidence or the lack thereof, it does not rebut by clear and convincing evidence the presumption of correctness in the state court's factual findings. The determination by the Missouri Court of Appeals that any error was harmless did not constitute an unreasonable determination of the facts, and thus any error in admitting the video did not have a substantial and injurious effect on the verdict, foreclosing any entitlement to habeas relief.

The judgment is affirmed.

_____